Mindy B. SENTER and Gustavo, Franco, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., and Chase Home Finance, LLC, Defendants.

Case No. 11–60308–CIV– DIMITROULEAS.

United States District Court, S.D. Florida.

Aug. 9, 2011.

11. The Court finds no support for, and must reject, Fernandes' suggestion that the Jones Act precludes arbitration.

1342

Lynda J. Grant, The Grant Law Firm, PLLC, New York, NY, Nathan C. Zipperian, Jayne Arnold Goldstein, Shepherd, Finkelman, Miller & Shah LLP, Weston, FL, for Plaintiffs.

Thomas Holland Loffredo, Gray Robinson, Fort Lauderdale, FL, Barbara N. Barath, Gregory P. Dresser, Morrison & Foerster, LLP, San Francisco, CA, for Defendants.

## ORDER GRANTING MOTION TO DISMISS

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon the Defendants' Motion to Dismiss and Incorporated Memorandum of Law [DE–15], filed herein on April 7, 2011. The Court has carefully considered the Complaint [DE–1], the Motion, the Plaintiffs' Response [DE–20], the Defendants' Reply [DE–21], the Plaintiffs' Notice of Supplemental Authority [DE–22], the Defendants' Notice of Supplemental Authority [DE–26], and the Plaintiff's Second Notice of Supplemental Authority [DE–27], and is otherwise fully advised in the premises.

## I. BACKGROUND

The following facts are according to the Plaintiff's Complaint, the allegations of which we must regard as true for the purposes of this Motion to Dismiss:

The first named defendant, JPMorgan Chase Bank, N.A. ("Chase"), is a federally chartered national association whose parent company is one of the world's largest providers of financial services. The second named defendant, Chase Home Finance, LLC ("Chase Finance", together with Chase, "Defendants"), is Chase's wholly owned subsidiary that originates and services both residential mortgage loans and home equity loans.

In 2008, the Defendants accepted a $25 billion loan from the United States Department of the Treasury ("U.S. Treasury"), which has since been repaid, as part of the Troubled Asset Relief Program ("TARP"), which represents the efforts of the U.S. Treasury to help alleviate the damage caused by the subprime mortgage crisis. By using funds from the TARP, Defendants were required to participate in the Home Affordable Modification Program ("HAMP"), which was established to assist homeowners to permanently modify the terms of their loan agreements. As a result, in July 2009, the Defendants signed a Commitment to Purchase Financial Instrument and Servicer Participation Agreement ("Servicer Participation Agreement") with the Treasury Department.

The first named plaintiff, Mindy B. Senter ("Senter"), a Florida resident, was issued a $300,000 residential mortgage for which the servicing rights were subsequently transferred to Chase. As a result of surgery for a life-threatening illness, Senter was unable to meet the obligations of her mortgage and contacted Chase to obtain a modification under the HAMP. On January 20, 2010, Senter was provided with a trial period plan agreement ("TPP Agreement") by Chase, which was effective on February 1, 2010. The TPP Agreement signed by Senter required her to make three trial period payments of $1,240.00 each, a requirement with which she complied with on time. In addition to paying this reduced amount, Senter agreed to forego interest on monies paid into escrow, to allow Chase Finance to apply such monies against delinquent monthly payments, to avoid short selling the property, to remain in the property as her primary residence, and, lastly, to pay defaulted interest and other mortgage servicing fees.

In regards to Senter's application for a permanent loan modification, Chase Finance confirmed to Senter's counsel that her file was complete and that all documentation had been received after numerous correspondence between Senter's counsel and Chase Finance on June 9, 2010. However, on August 19, 2010, Senter received a letter from Chase Finance denying her modification stating that they were unable to offer her a Home Affordable Modification because she did not provide Chase Finance with the documents it had requested. On October 20, 2009, Chase Finance sent an "Acceleration Warning (Notice of Intent to Foreclose)" to Senter informing her that she had been in default of her mortgage since January 1, 2010 and that if she did not cure the default by paying the balance within 30 days, Chase Finance would accelerate her loan and commence foreclosure proceedings. The Defendants did not extend her a permanent modification of her loan.

The second named plaintiff, Gustavo Franco, ("Franco", together with Senter and other class members, "Plaintiffs"), a Florida resident, was issued a $382,000 residential mortgage from Chase, for which the servicing rights were granted to Chase at a point subsequent to the loan's origination. Due to reasons unspecified in the Complaint, Franco sent an application for a trial period plan to Chase with all required documentation on or about May 25, 2009. In August 2009, Franco was provided with a TPP Agreement which became effective on September 1, 2009. The TPP Agreement signed by Franco required him to make three trial period payments of $1,395.00 each.

Over the course of several months, Franco received and responded to numerous correspondences from Chase Finance requesting additional documentation in order to process the requested loan modification. On October 27, 2009, Franco received a letter informing him that he was in default of his mortgage. After further document requests and correspondence, Chase Finance informed Franco's counsel that his proposed modification would not result in meeting the threshold established by the HAMP[1] and, as a result, he would be denied a permanent loan modification.

---

**1.** Supplemental Directive 09–01 ("SD 09–01"), as issued by the U.S. Treasury, establishes a requirement that loan modifications result in the borrower's monthly mortgage payments ratio being reduced to 31% of the borrower's monthly income. In reaching this threshold, SD 09–01 mandates that Servicers utilize a waterfall approach to loan modifica-

On March 11, 2010, Chase Finance sent Franco an "Acceleration Warning (Notice of Intent to Foreclose)" apprising Franco of the monthly payments and fees owed by him due to his default. On that same day, Chase Finance informed Franco that he was obligated to pay the default on his loan within 30 days, and that Chase would take steps to protect its interest, for which he would be held liable. The Defendants did not extend him a permanent modification of his loan.

The Plaintiffs commenced the instant action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(d), which confers subject matter jurisdiction to federal courts over certain class action lawsuits. The Plaintiffs bring this action on behalf of all persons who entered into TPP Agreements with the Defendants, qualified for a permanent loan modification, and did not receive one. On February 11, 2011, the Plaintiffs filed a Complaint seeking an award of damages arising from the Defendants' conduct and failure to extend to the Plaintiffs permanent loan modifications after entering into trial period plan agreements ("TPP Agreements"). The Plaintiffs bring forth four causes of action arising out of Defendants failure to extend to them permanent loan modifications, which are as follows: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) promissory estoppel, and (4) unjust enrichment. The Plaintiffs request the Court to both enjoin further breaches by the Defendants and cause the Defendants to disgorge any fees, expenses, interest, and other payments which they received and obtained by entering into TPP Agree-

ments with the Plaintiffs and other members of the proposed class, without having issued permanent loan modifications to such Plaintiffs and class members.

## II. DISCUSSION

### A. Motion to Dismiss Standard

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating *Conley*, 355 U.S. at 41, 78 S.Ct. 99). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F.2d 332, 334–36 (11th Cir.1992) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir.1967)). However, this is inapplicable if the allegations are merely "threadbare re-

tion that requires Servicers to apply the modification steps enumerated in the directive sequentially, such as extending the term of the

loan and reducing the interest rate, until the borrower's monthly mortgage payments reach the threshold ratio. (Compl. at ¶ 51).

citals of a cause of action's elements, supported by mere conclusory statements ...". *Iqbal,* 129 S.Ct. at 1949. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint, and "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly,* 550 U.S. at n. 8, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

## B. Defendants' Motion to Dismiss

The Defendants move to dismiss the Plaintiffs' Complaint on the grounds that: (1) the Plaintiffs' claim for breach of contract (Count I) and claim for breach of the implied covenant of good faith and fair dealing (Count II) fail since the TPP Agreements are not valid contracts, (2) the Plaintiffs' claim for promissory estoppel (Count III) fails because the Plaintiffs failed to adequately plead that they reasonably relied on a promise by the Defendants, and (3) the Plaintiffs' claim for unjust enrichment (Count IV) fails since the Defendants were already entitled to any benefits they received from the Plaintiffs pursuant to their mortgages and, as a result, the Plaintiffs were unable to adequately plead that it would be unjust to allow the Defendants to retain benefits to which they were already legally entitled.

### 1. Whether the Defendants' Failure to Extend a Permanent Modification to the Plaintiffs is a Breach of Contract (Count I).

The Defendants argue that the TPP Agreements are not valid contracts,

hence, the failure to extend a permanent loan modification to the Plaintiffs would not be considered a breach of contract. (Compl. at ¶¶ 171–177). In order to properly plead a claim for breach of contract under Florida law, a plaintiff must prove the existence of a valid contract, a breach of such contract, and damages resulting from such breach. *Knowles v. C.I.T. Corp.,* 346 So.2d 1042, 1043 (Fla. 1st DCA 1977). In order to establish the presence of a valid contract, a plaintiff must allege the existence of: (1) an offer; (2) acceptance of the offer; (3) consideration; and (4) sufficient specification of the essential terms of the agreement. *E.g., St. Joe Corp. v. McIver,* 875 So.2d 375, 381 (Fla. 2004).

The Defendants argue that the TPP Agreements are not valid contracts because: (i) the Plaintiffs failed to identify any consideration provided to the Defendants in connection with entering into the TPP Agreements and (ii) the TPP Agreements were unenforceable agreements to agree since material terms were still undetermined. In the alternative, the Defendants also argue that, assuming the TPP Agreements are valid contracts, the language of the agreements does not declare that the Plaintiffs are eligible for permanent loan modifications under the HAMP, and thus, the Defendants' refusal to extend to the Plaintiffs a permanent loan modification is not considered a breach of the TPP Agreements. The Court will analyze each of the three grounds of dismissal by the Defendants in turn.

### a. Whether the TPPs Were Valid Contracts.

As previously discussed, the Plaintiffs must plead the existence of an offer, acceptance of the offer, consideration, and sufficient specification of the essential terms of

the agreement in order to establish the presence of a valid contract under Florida law. *St. Joe Corp. v. McIver*, 875 So.2d at 381. Specifically at issue are whether the Plaintiffs provided consideration to the Defendants, and whether there was sufficient specification of the essential terms of the agreement. The Defendants do not contest the presence of an offer or the acceptance of the offer by the Plaintiffs.

*(i.) Whether the Plaintiffs identified any consideration provided to the Defendants.*

■ The Defendants argue that the Plaintiffs' remittance of reduced monthly payments in accordance with the terms of the TPP Agreements constitutes the performance of a preexisting duty and, therefore, does not amount to the consideration necessary to support a valid contract. Thus, the Defendants argue that the Plaintiffs have failed to plead a valid contract because they have failed to identify any consideration that they have provided to the Defendants. (Defs.' Mot. to Dismiss at 12).

■ Under Florida law, the performance of a preexisting duty does not constitute the consideration necessary to support a valid contract. *See Brinson v. Herlong*, 121 Fla. 505, 164 So. 137 (1935). The consideration required to support a contract need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee. 1 *Williston on Contracts* § 102 (1921). The Florida Supreme Court in *Dorman v. Publix–Saenger–Sparks Theatres*, 135 Fla. 284, 291, 184 So. 886 (1938), described consideration as follows:

> It is not necessary that a benefit should accrue to the person making the prom-

ise; it is sufficient that something valuable flows from the person to whom it is made, or that he suffers some prejudice or inconvenience, and that the promise is the inducement to the transaction. Indeed, there is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not.

*Id.* (citation omitted); *See also Henderson v. Kendrick*, 82 Fla. 110, 89 So. 635 (1921).

While Franco fails to allege consideration for the TPP Agreement he entered into, Senter argues that the consideration she provided was (1) to forego monies paid into escrow, (2) to have the Defendants apply such monies to any delinquent monthly payments, (3) to not short sell the property, (4) to remain in the property as her primary residence, and (5) to pay defaulted interest and other mortgage servicing fees. (Compl. at ¶ 111).

The Defendants argue that they had a preexisting legal right under the Plaintiffs' mortgages to most of the benefits alleged as consideration by the Plaintiffs, and, to the extent that the TPP Agreements required anything additional, such requirements were conditions of the application process rather than a bargained for inducement to the Defendants. (Defs.' Mot. to Dismiss at 13). Further, the Defendants maintain that in order for a promise or detriment to be viewed as consideration, it must be the inducement to the Defendants' promise. *See Dorman*, 135 Fla. at 291, 184 So. 886.

Since all the terms and provisions of the Plaintiffs' mortgages remain in full effect

per the TPP Agreements, the Defendants argue that any alleged consideration resulting from the obligations arising out of the Plaintiffs' original mortgages cannot be consideration. (Defs. Mot. to Dismiss at 13). In particular, the Defendants argue that the Plaintiffs' mortgages contractually entitled them to the escrow payments received, the default interest and other mortgage servicing fees accrued, and the reduced monthly payments received. *Id.*

The Defendants maintain that they have a contractual right to require escrow payments from Senter without paying interest on such funds. *Id.* In establishing their contractual right to escrow payments, the Defendants cite the section *Funds for Escrow Items* of Senter's mortgage note ("Note") that reads, "Borrower shall pay to Lender on the day Periodic Payments are due under the Note ... a sum ... to provide for payment of amounts due for ... taxes [and] insurance." *Id.* at Ex. 3 ¶ 3. In regards to interest payments on the funds in escrow, the Note reads that, "Unless an agreement is made in writing ... Lender shall not be required to pay borrower any interest or earnings on the [escrow fund]." *Id.* The Defendants further argue that the TPP Agreements do not state that the Defendants would apply escrow payments to any delinquent monthly payments. *Id.* at 14.

The Defendants maintain, in regards to their accrual of default interest and other mortgage servicing fees, that they have the contractual right to such payments arising from the Note as well. *Id.* at 13. The Defendants cite the first section of Senter's Note, *Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges,* which reads, in pertinent part, that "Borrower shall pay when due the principal of, and interest on,

the debt evidenced by the Note and any prepayment charges and late charges due under the Note." *Id.* at Ex. 3 ¶ 1. As such, the Defendants maintain that they are contractually entitled to the default interest and other mortgage servicing fees per the Note.

The Defendants also argue that the reduced monthly payments themselves would not constitute consideration since such payments are less than what the Plaintiffs are already legally obligated to pay pursuant to their mortgages. *Id.* at 15. The Defendants emphasize that courts routinely have found that the payment of only a portion of what a borrower is already legally obligated to pay is not consideration. *See International Shoe Co. v. Carmichael,* 114 So.2d 436, 437 (Fla.Dist.Ct.App. 5th Dist.1959); (Defs.' Mot. to Dismiss at 15). Specifically, the Defendants argue that courts have found that TPP payments are payments that borrowers were obligated to make under their existing mortgages and that such payments, therefore, could not constitute consideration. *See Ishler v. Chase Home Finance, LLC,* No. 1: CV10–2117, 2011 WL 744538 at *6, 2011 U.S. Dist. LEXIS 17620 at *15 (M.D.Pa. Feb. 23, 2011); (Defs.' Mot. to Dismiss at 15).

The Defendants contend that Senter's agreement to remain in her property as her primary residence is required by the HAMP Guidelines and was not an inducement for the Defendants to enter into the TPP Agreements. *See* Supplemental Directive 09–01 ("SD 09–01"); (Defs.' Mot. to Dismiss at 14). The Defendants argue that this requirement is a condition of participation in the trial period rather than a bargained for consideration given in exchange for a permanent loan modification. *Id.*

The Defendants contend that the submission of additional documentation, much

like the agreement to maintain the property as a primary residence, is also a condition of the application process originating from the HAMP Guidelines rather than an inducement to the Defendants to enter into the TPP Agreements. SD 09–01 at 5; (Defs.' Mot. to Dismiss at 15). The Defendants argue that courts view the provision of documentation as simply a part of the application process which the borrower complies with in hopes of receiving a modification, and thus is not consideration. *See Prasad v. BAC Home Loans Servicing, LP,* No. 2:10–CV–2343–FCD/KJN, 2010 WL 5090331, at *3–4, 2010 U.S. Dist. LEXIS 133938, at *9 (E.D.Cal. Dec. 7, 2010); (Defs.' Mot. to Dismiss at 15). Additionally, the Defendants argue that the Plaintiffs failed to prove how the submission of extra documentation provided the Defendants a benefit, and to prove that it was part of a bargained for exchange. *Id.*

Lastly, the Defendants contend that the TPP Agreements do not prohibit the Plaintiffs from short selling their property. *Id.* at 14. Therefore, in the absence of a prohibition on short selling the property, the Plaintiffs cannot claim that such prohibition is consideration.

The Plaintiffs respond to the Defendants by arguing that they are under no preexisting legal obligation to provide documentation of their current income, make legal representations about their personal circumstances, or make payments into a newly established escrow account, which leads to the conclusion that such requirements of the trial period represent consideration to the Defendants. *See Durmic v. J.P. Morgan Chase Bank, N.A.,* No. 10–CV–10380–RGS, 2010 WL 4825632, at *3, 2010 U.S. Dist. LEXIS 124603, at *10–11 (D.Mass. Nov. 24, 2010); *Turbeville v. JPMorgan Chase Bank, N.A.,* 2011 U.S. Dist. LEXIS

42290, at *12–13 (C.D.Cal. Apr. 4, 2011); *Bosque v. Wells Fargo Bank, N.A.,* 762 F.Supp.2d 342, 351–52 (D.Mass.2011); (Pls.' Resp. at 14); *Belyea v. Litton Loan Servicing, LLP,* 2011 WL 2884964, at *7–8, 2011 U.S. Dist. LEXIS 77734, at *24 (D.Mass. Jul. 15, 2011). The Plaintiffs emphasize that there is a low threshold for consideration, as "[u]nder Florida law, '[t]he consideration required to support a contract need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee.'" *Viles & Beckman v. Lagarde,* 2006 WL 2556941, at *7, 2006 U.S. Dist. LEXIS 62659, at *18 (M.D.Fla. Sept. 1, 2006) (quoting *Real Estate World Fla. Commercial, Inc. v. Piemat, Inc.,* 920 So.2d 704, 706 (Fla. 4th DCA 2006)); (Pls.' Resp. at 14). The Plaintiffs further emphasize that "consideration encompasses any detriment to the promisee, no matter how small." *Turbeville,* 2011 U.S. Dist. LEXIS 42290, at *12, (citing *Durmic,* 2010 WL 4825632, at *3, 2010 U.S. Dist. LEXIS 124603, at *11), (Pls.' Resp. at 14). As such, the Plaintiffs contend that they have adequately alleged consideration.

The Court agrees with the Defendants that the Plaintiffs have failed to adequately plead consideration for the purposes of establishing a valid contract. The consideration pled by the Plaintiffs consists primarily of both preexisting obligations arising from the Plaintiffs' mortgage notes and conditions of application to be considered for the extension of a TPP Agreement. The preexisting obligations arising from the Plaintiffs' mortgages include the obligation to provide mortgage payments, the requirement to provide funds for escrow, and the accrual of default interest and other mortgage servicing fees. The conditions of application related to the extension of the TPP Agreements include both the

requirement to remain in the property as a primary residence and the provision of additional documentation.

In regards to the provision of additional documentation, even though the Plaintiffs had no preexisting obligation to provide such information, this Court does not agree with the holdings in *Durmic, Turbeville,* and *Bosque* that the provision of additional documentation represents consideration. The courts in *Durmic, Turbeville,* and *Bosque* fail to distinguish between conditions for application and consideration for an agreement, and the Court disagrees with the result accordingly.

This Court finds the holding in *Prasad* more persuasive. 2010 WL 5090331, 2010 U.S. Dist. LEXIS 133938. In *Prasad,* the plaintiff alleged that he adequately performed the requirements of his TPP Agreement by providing the additional documentation requested and making the three required payments. *Id.* at *2–3, 2010 U.S. Dist. LEXIS 133938, at *6. The court in *Prasad* found that the plaintiff's allegations failed to sufficiently allege a binding contract between the plaintiff and the defendant bank, and also, that the language of the TPP Agreement, generally, made clear that the provision of the requested documents was simply a part of the application process which the plaintiff was willing to complete in the hope that the defendant would modify his loan. *Id.* at *3–4, 2010 U.S. Dist. LEXIS 133938, at *7–*10.

Further, an argument in the Plaintiffs' response supports the proposition that the submission of additional documentation is not an inducement to the Defendants. In their response, the Plaintiffs' make the following argument, which reads as follows:

That Chase required from each Plaintiff all documentation necessary to perform a NPV analysis and to determine eligibility for permanent modification (Compl. ¶¶ 8–10) before offering each Plaintiff a TPP, and did not offer a TPP to every homeowner, supports a reasonable inference that Chase performed a NPV analysis and that Chase determined each Plaintiff was eligible for permanent modification ...

(Pls.' Resp. at 7). If the provision of additional documentation was in fact an inducement to the Defendants, then the Defendants would have extended TPP Agreements to every borrower who requested as such and provided the additional documentation. However, since the Defendants did not offer a TPP Agreement to every borrower who submitted the necessary documentation, as argued in Plaintiffs' response, then it logically follows that the provision of additional documentation was not a sufficient inducement to entice the Defendants into entering into the TPP Agreements.

In the instant case, the provision of additional documentation was required to pre-screen applicants for qualification for a TPP Agreement. The provision of the additional documentation was not an inducement to the Defendants to enter into TPP Agreements, as the mere provision of such documentation did not induce the Defendants to extend TPP Agreements to every applicant.

As such, the Court cannot conclude that the Plaintiffs have stated a plausible claim for relief in Count I of the Complaint as they failed to adequately plead consideration.

*(ii.) Whether the TPP Agreements are unenforceable agreements to agree.*

 The Defendants also argue that the Plaintiffs have failed to adequately

plead a valid contract because the TPP Agreements are, at best, unenforceable "agreements to agree." (Defs.' Mot. to Dismiss at 10). Under Florida law, an agreement between parties is unenforceable if the terms of the agreement "are so vague, indefinite, uncertain and incomplete, that it is impossible to ascertain the intent of the parties thereto." *Brown v. Dobry*, 311 So.2d 159, 160 (Fla. 2d DCA 1975).[2]

The Defendants contend that the Plaintiffs do not identify any of the key terms of the purported loan modification in the TPP Agreements, but rather, allege only that a mathematical formula[3] will be followed to determine the new payment, over which the Defendants retain significant discretion in the calculation of such payments (*i.e.* whether the target rate achieved by an interest rate reduction, loan term increase, etc.). *Id.* at 11. Therefore, the Defendants argue that since the key terms of the modified loan are uncertain and are subject to their discretion, it should be considered an unenforceable agreement to agree. *Id.* at 12.

In response, the Plaintiffs contend that the TPP Agreements are not agreements to agree because they establish the precise nature and timing of each party's obligations, leaving nothing to be negotiated at a later date. (Pls.' Resp. at 12). The Plaintiffs further characterize the TPP Agreements as agreements to receive or issue a modification at a later date. *See Turbeville*, 2011 U.S. Dist. LEXIS 42290,

at *11; *Durmic*, 2010 WL 4825632, at *3–5, 2010 U.S. Dist. LEXIS 124603, at *13–16, (Pls.' Resp. at 12). The Plaintiffs argue that the cases cited by the Defendants are inapposite because the TPP Agreements are not loan agreements in and of themselves, but rather, contracts to provide the Plaintiffs with permanent loan modifications at a specified date if the Plaintiffs comply with the conditions set forth in the TPP Agreements. *Id.* at 13. Since the essential terms of the promised permanent loan modifications are not open to negotiation or discretionary alteration by either party, the Plaintiffs argue that the TPP Agreements are not mere agreements to agree. *Id.* Lastly, the Plaintiffs argue that, at the very least, "the issue is one of the parties' intent, and cannot be resolved in the context of a motion to dismiss." *Durmic*, 2010 WL 4825632, at *4, 2010 U.S. Dist. LEXIS 124603, at *15, (Pls.' Resp. at 14).

In reply, the Defendants argue that, even assuming that the TPP Agreements somehow incorporated the mathematical formula established in SD 09–01, the formula provides the Defendants with significant discretion to vary the terms of any proposed modification. (Defs.' Reply at 8). In this regard, the Defendants may reduce the interest rate, create an initial interest rate, alter the loan term by up to 480 months, or forbear or forgive principal. *See* SD 09–01 at 8–10; (Defs.' Reply at 8). The Defendants also contend that, in any event, the Plaintiffs' reliance on the HAMP Guidelines rather than a formula

---

**2.** *See also Hulse v. Orthodontic Educ., Ltd.*, No. 3:05–cv–5940–J–32TEM, 2011 WL 32437, at *4, 2011 U.S. Dist. LEXIS 730, at *11–13 (M.D.Fla. Jan. 4, 2011); *ABC Liquors, Inc. v. Centimark Corp.*, 967 So.2d 1053, 1056 (Fla. 5th DCA 2007); *see also Bankers Trust Co. v. Basciano*, 960 So.2d 773, 777 (Fla. 5th DCA 2007).

**3.** SD 09–01 enumerates several modification steps which must be applied by servicers in the stated order of succession until the borrower's monthly mortgage payment ratio is reduced as close as possible to 31% without going below 31%. *See* SD 09–01 at 8–10.

contained in their TPP Agreements to provide the terms of their permanent modifications is an improper attempt to assert a private right of action under the HAMP. *See Bourdelais v. J.P. Morgan Chase Bank, N.A.*, No. 3:10–CV–670–HEH, 2011 WL 1306311 at *4, 2011 U.S. Dist. LEXIS 35507 at *13 (E.D.Va. Apr. 1, 2011); (Defs.' Reply at 8).

The Court agrees with the Defendants. In arguing that the TPP Agreements represent valid contracts to enter into permanent loan modifications at a future date, the Plaintiffs ignore that the key terms of the purported modification, such as the interest rate, the loan term, and the principal balance, have yet to be decided. Further, since the TPP Agreements do not specifically incorporate the HAMP Guidelines into the performance of their underlying obligations, any reference to such guidelines represents an improper attempt to assert a private right of action under the HAMP.

The plain language of the TPP Agreements does not explicitly guarantee permanent loan modifications for the Plaintiffs, but rather, establishes the rights and obligations of the parties to the agreement during a trial period after which the Defendants may extend permanent loan modifications to the Plaintiffs if the Defendants determine that they qualify. Further, the nature and timing of the potential perma-

nent loan modifications are left indefinite as the TPP Agreements do not establish any of the terms governing the potential loan modifications. Since the TPP Agreements are indefinite and uncertain as to material terms of the permanent loan modifications, such agreements represent, at best, unenforceable agreements to agree that do not rise to the level of a valid contract. *See Anilus v. OneWest Bank, FSB*, No. CV2010–01774, 2011 WL 2735052 at *1–2, 2011 Mass.Super. LEXIS 102 at *3–4 (Super.Ct.Mass. May 3, 2011).

In response to both arguments made by the Defendants that the TPP Agreements are not valid contracts, the Plaintiffs highlighted recent cases where the Defendants were unsuccessful in asserting that the TPP Agreements were not valid contracts. The Plaintiffs' cited two recent class action lawsuits involving the Defendants [4], (Pls.' Resp. at 9), in addition to two other cases [5] where similar arguments have been raised unsuccessfully. In addition, the Plaintiffs submitted both a Notice of Supplemental Authority [DE–22] and a Second Notice of Supplemental Authority [DE–27] to bring additional authorities [6] to the attention of this Court, most of which were recently decided by the United States District Court for the District of Massachusetts. Although the decisions highlighted by the Plaintiffs did not involve the application of Florida law, the Plaintiffs argue that Florida law is fundamentally the same as the state laws applied in the cases therein

---

4. *Durmic v. J.P. Morgan Chase Bank, N.A.*, No. 10–CV–10380–RGS, 2010 WL 4825632 (D.Mass. Nov. 24, 2010), and *Turbeville v. JPMorgan Chase Bank, N.A.*, No. SA CV 10–01464, 2011 U.S. Dist. LEXIS 42290 (C.D. Cal. Apr. 4, 2011)

5. *See Bosque v. Wells Fargo Bank, N.A.*, 762 F.Supp.2d 342, 345–46 (D.Mass.2011); *Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL 1134451, 2011 U.S. Dist. LEXIS 32350 (N.D.Cal. Mar. 28, 2011).

6. *In re Bank of America Home Affordable Modification Program Contract Litigation*, No. 10–md–02193–RWZ, 2011 WL 2637222 (D.Mass. Jul. 6, 2011); *Belyea v. Litton Loan Servicing, LLP*, 2011 WL 2884964, 2011 U.S. Dist. LEXIS 77734 (D.Mass. Jul. 15, 2011); *Fletcher v. OneWest Bank, FSB*, 798 F.Supp.2d 925, 2011 WL 2648606, 2011 U.S. Dist. LEXIS 72562 (N.D.Ill Jun. 30, 2011).

without specifically supporting this assertion, but rather, by referring generally to the arguments in their response. (Pls.' Resp. at 9).

The Defendants also submitted a Notice of Supplemental Authority [DE–26]. In their Notice, the Defendants highlight six recent decisions [7] involving seven cases that support various aspects of their argument that the TPP Agreements are not valid contracts. The Defendants did not specifically articulate as to why the cases in their Notice should be applied in the context of Florida law.

Considering the diversity in case law,[8] the Court cannot conclude that the Plaintiffs have stated a plausible claim for relief in Count I of the Complaint as they failed to adequately plead sufficient specification of the essential terms of the agreement.

**b. Assuming that the TPP Agreements are Contracts, is the Defendants' Failure to Offer the Plaintiffs a Permanent Loan Modification a Breach of the Terms of the TPP.**

█ In the alternative, the Defendants argue that the plain language of the TPP Agreements did not promise permanent loan modifications to the Plaintiffs and, therefore, the Defendants' failure to offer the Plaintiffs permanent loan modifications cannot be considered a breach of the TPP Agreements, assuming the TPP Agreements were valid contracts. (Defs.' Mot. to Dismiss at 5). The Defendants contend that the Plaintiffs' claim for breach of contract contradicts the plain language of their TPP Agreements because the agreements did not guarantee the Plaintiffs permanent loan modifications if they complied with the payment terms of the agreements and maintained their financial situation. *Id.* The Defendants base this argument on the assertions that (i) the Plaintiffs' TPP Agreements expressly articulate that the Plaintiffs are not entitled to permanent modifications unless the Defendants determine that they qualify, (ii) the Plaintiffs cannot rely on the HAMP Guidelines as evidence that the Defendants determined that the Plaintiffs qualify for a permanent loan modification, and (iii) the Plaintiffs cannot rely on the Defendants' alleged internal policy as evidence that the Defen-

7. *See Anilus v. OneWest Bank, FSB,* No. CV2010–01774, 2011 WL 2735052, 2011 Mass.Super. LEXIS 102 (Super.Ct.Mass. May 3, 2011); *Clark v. Wachovia Mortgage,* No. SACV 11–00226–CJC(RNBx), 2011 U.S. Dist. LEXIS 63398 (C.D.Cal. Jun. 9, 2011); *Wright v. Chase Home Finance LLC,* No. CV–11–0095–PHX–FJM, 2011 WL 2173906, 2011 U.S. Dist. LEXIS 58977 (D.Ariz. Jun. 2, 2011); *Houston v. U.S. Bank Home Mortgage Wisconsin Servicing,* No. 10–13780, 2011 WL 1641898, 2011 U.S. Dist. LEXIS 46878 (E.D.Mich. May 2, 2011); *Fowler v. Aurora Home Loans,* No. 2:10–cv–623, 2011 U.S. Dist. LEXIS 73344 (E.D.Va. Mar. 31, 2011); and *Lucia v. Wells Fargo Bank, N.A.,* No. C10–04749 JSW, 798 F.Supp.2d 1059, 2011 WL 3134422, 2011 U.S. Dist. LEXIS 73497 (N.D.Cal. Apr. 22, 2011) and *Corvello v. Wells Fargo Bank, N.A.,* No. 10–05072 JSW, 2011 U.S. Dist. LEXIS 73497 (N.D.Cal. Apr. 22, 2011).

8. The Court recognizes that there exists a disparity of opinion amongst the courts in regards to the extension of TPP Agreements prior to the issuance of Supplemental Directive 10–01 ("SD 10–01") since SD 10–01 required servicers to qualify borrowers for permanent loan modifications prior to extending them a TPP Agreement. The fact that the Defendants and similar institutions were successful in their motions with some courts and unsuccessful with others is not dispositive for the purposes this Court's decision. While the Court acknowledges that this disparity of opinion exists, the Court is more apt to follow the guidance of the cases consistent with this opinion and the rationale contained herein. Harmonizing the disparity amongst the various decisions of the courts for cases with substantially similar operative facts is not the job of this Court, but rather, should be addressed at the appellate level.

dants determined that they qualify for permanent loan modifications.

*(i.) Whether the plain language of the Plaintiffs' TPP Agreements expressly provides that the Plaintiffs are not entitled to permanent loan modifications unless the Defendants determine that they qualify.*

The Defendants argue that the Plaintiffs' reliance solely on the opening sentence of the TPP Agreements, which says "[i]f [the Plaintiffs are] in compliance with [the TPP Agreements] and [the Plaintiffs'] representations in Section 1 continue to be true in all material respects, then the [Defendants] will provide [the Plaintiffs] with [permanent loan modifications]...." (Compl. Ex. A; Defs.' Mot. to Dismiss Ex. 1), was not reasonable. (Defs.' Mot. to Dismiss at 7). In support, the Defendants indicate that eight federal courts have dismissed contract claims based on TPP Agreements, finding no promise of permanent loan modification,[9] even though other courts, such as the court in *Durmic,* have found otherwise. No. 10–CV–10380–RGS, 2010 WL 4825632 (D.Mass. Nov. 23, 2010); (Defs.' Mot. to Dismiss at 7–8).

The Defendants argue that the Plaintiffs' Complaint relies primarily on the following language from their TPP Agreements:

If I am in compliance with this Trial Period Plan and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

(Compl. Ex. A; Defs.' Mot. to Dismiss Ex. 1). However, the Defendants emphasize that the Plaintiffs' reliance is inapposite, as the terms of the TPP Agreements afford the Defendants discretion to determine whether the Plaintiffs qualify for a permanent loan modification. The Defendants highlight subsequent verbiage of the TPP Agreements that requires the Plaintiffs to send documentation in order "to permit verification of all of my income ... *to determine whether I qualify for the offer [of a permanent loan modification]* described in this Plan." (Defs.' Mot. to Dismiss at 6; Compl. Ex. A) (emphasis added). The Defendants further highlight the phrasing of Section 2.G of the TPP Agreement that reads, "I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents *if the Lender determines that I do not qualify ....*" *Id.* At ¶ 2.G (emphasis added). Section 3 of Senter's TPP Agreement, on which the preamble of the document relies, similarly

**9.** *See Wigod v. Wells Fargo Bank, N.A.,* No. 10–CV–2348, 2011 WL 250501, at *7, 2011 U.S. Dist. LEXIS 7314, at *20 (N.D.Ill. Jan. 24, 2011); *Vida v. OneWest Bank, F.S.B.,* No. 10–987–AC, 2010 WL 5148473, at *6, 2010 U.S. Dist. LEXIS 132000, at *15 (D.Or. Dec. 13, 2010); *Torres v. Litton Loan Servicing L.P.,* No. 10–cv–01709–OWW–SKO, 2011 WL 149833, at *2–3, 2011 U.S. Dist. LEXIS 4616, at *6 (E.D.Cal. Jan. 18, 2011); *Grill v. BAC Home Loans Servicing L.P.,* No. 10–CV–03057–FCD/GGH, 2011 WL 127891, at *8, 2011 U.S. Dist. LEXIS 3771, at *21 (E.D.Cal.

Jan. 14, 2011); *Prasad v. BAC Home Loans Servicing L.P.,* No. 2:10–CV–2343–FCD/KJN, 2010 WL 5090331, at *5, 2010 U.S. Dist. LEXIS 133938, at *12–13 (E.D.Cal. Dec. 7, 2010); *Brown v. Bank of N.Y. Mellon,* No. 1:10–CV–550, 2011 WL 206124, at *3, 2011 U.S. Dist. LEXIS 6006, at *8 (W.D.Mich. Jan. 21, 2011); *Lonberg v. Freddie Mac,* 776 F.Supp.2d 1202, 1208–09 (D.Or.2011); *Bourdelais v. J.P. Morgan Chase Bank, N.A.,* No. 3:10–CV–670–HEH, 2011 WL 1306311, at *4–5, 2011 U.S. Dist. LEXIS 35507, at *14 (E.D.Va. Apr. 1, 2011).

emphasizes that the conditions of permanent modification include a determination by the Defendants that the borrower qualifies, as follows:

> If (1) my representations in Section 1 were and continue to be true in all material respects; (2) I comply with the requirements in Section 2; (3) I provide the Lender with all required information and documentation; and (4) *the Lender determines that I qualify,* the Lender will send me a Modification Agreement for my signature . . . .

*Id.* at ¶ 3 (emphasis added). The Defendants argue that Franco's TPP Agreement similarly cautions that "the Lender will send me a signed copy of this Plan if I qualify for the Offer. . . ." (Defs.' Mot. to Dismiss Ex. 1; see also *id.* at ¶ 2.F (If Chase "does not provide me a fully executed copy of . . . the Modification Agreement, . . . the Loan Documents will not be modified.")).

The Defendants additionally argue that the instant case can be distinguished from the Plaintiffs' application of *Durmic,* 2010 WL 4825632, to establish the proposition that the TPP Agreements are potential promises to provide the Plaintiffs with permanent loan modifications. (Defs.' Mot. to Dismiss at 8). The Defendants argue that the *Durmic* court was not confronted with the issue of whether the TPP Agreements entail a promise to provide permanent loan modifications because the Defendants did not move to dismiss on that basis, but rather, the Defendants challenged the enforceability of any purported promise on other bases. *Durmic,* 2010 WL 4825632, at \*4, (Defs.' Mot. to Dismiss at 8).

The Plaintiffs respond to the Defendants' arguments by contending that the TPP Agreements "characterize[ themselves] as an agreement, contain[ ] signature lines for the Lender and the Borrower and include[ ] distinctly contractual phrases such as 'under seal' and 'time is of the essence.'" *Durmic,* 2010 WL 4825632, at \*1 n. 4, 2010 U.S. Dist. LEXIS 124603, at \*4 n. 4, (Pls.' Resp. at 9). The Plaintiffs rely on *Turbeville* to reject the argument that the language of the TPP Agreements does not obligate or bind the Lender to make a permanent loan modification if the Lender determines that the borrower does not qualify. 2011 U.S. Dist. LEXIS 42290. The Plaintiffs highlight the following language from the *Turbeville* opinion, as follows:

> Defendant contends that this last phrase plainly states that a permanent loan modification is subject to Defendant's unfettered discretion. The Court is not convinced, however, as the phrase "if the Lender determines that I do not qualify" may be interpreted to mean simply that the Lender has the discretion to assess the homeowner's compliance with the trial period. The terms of the Agreement can be read to suggest that if a homeowner fails to comply, then the Lender may decline to issue a HAMP loan modification because the homeowner no longer qualifies for it, but not that the Lender has discretion to reject homeowners who completed the trial successfully. Indeed, to read Section 2 of the Agreement as giving the Lender arbitrary discretion to refuse to provide a HAMP loan modification on any grounds runs counter to the other statements in Section 1 and Section 2, which reiterate that after the homeowner meets the specified requirements, the Lender will respond by providing a loan modification.

2011 U.S. Dist. LEXIS 42290, at \*10–11, (Pls.' Resp. at 10). The Plaintiffs also

argue that the *Turbeville* court rejected the same arguments made by the Defendants regarding other language of the TPP Agreements, quoting the following:

> Defendant also contends that any discretion on its part necessarily entails a finding that the TPP Agreements are not contracts. The Court disagrees. If the TPP Agreements are interpreted as vesting Defendant with the discretion to determine compliance with terms of the trial, the TPP Agreements look similar to many other run-of-the-mill contracts. The trial requirements are straightforward. A homeowner must make three specified payments and provide necessary financial documentation. The provision that allows Defendant to verify compliance with these objective requirements does not automatically preclude a finding that the Agreements constitute valid contracts.

2011 U.S. Dist. LEXIS 42290, at *11, (Pls.' Resp. at 10).

Further, the Plaintiffs argue that the eight decisions referenced by the Defendants which found that the TPP Agreements do not represent promises for permanent loan modifications are not applicable to the instant case because most of those cited decisions are individual actions and all of them are factually distinguishable from the instant Complaint. (Pls.' Resp. at 11). The Plaintiffs argue that, unlike the cases cited by the Defendants, the instant Complaint is brought on behalf of homeowners who allege that they qualified for permanent loan modifications, entered into TPP Agreements with the Defendants, and subsequently did not receive the permanent loan modifications to which the Plaintiffs were entitled. (Pls.' Resp. at 11).

Additionally, the Plaintiffs argue that the Defendants' attempt to distinguish the facts of the instant case from those of *Durmic* fail, since the court in *Durmic* held that the TPP Agreements may be enforceable contracts requiring the Defendants to provide permanent loan modifications to the borrowers who comply therewith. 2010 WL 4825632, at *2–5, 2010 U.S. Dist. LEXIS 124603, at *8–16, (Pls.' Resp. at 12). Moreover, the Plaintiffs assert that the Defendants raised the arguments in *Turbeville* that they purportedly did not raise in *Durmic*, which were subsequently rejected by the *Turbeville* court. 2011 U.S. Dist. LEXIS 42290, (Pls.' Resp. at 12).

In reply, the Defendants argue that the HAMP did not require servicers to verify eligibility prior to extending a TPP Agreement to a borrower until the program was amended by directive in January 2010.[10] *Morales v. Chase Home Fin. LLC*, No. 10–02068–JSW, 2011 WL 1670045, at *7–8, 2011 U.S. Dist. LEXIS 49698, at *20–21 (N.D.Cal. Apr. 11, 2011); (Defs.' Reply at 2). The Defendants further argue that the plain language of the Plaintiffs' TPP Agreements contradicts their assertion that the Defendants qualified the Plaintiffs for permanent loan modifications prior to extending TPP Agreements to them. *Id.* at 3. The Defendants highlight language in Senter's TPP Agreement that explains that she will receive a modification only if "the Lender determines that [she] qualif[ies]." (Compl. Ex. A, ¶ 3); (Defs.' Reply at 3). The Defendants also point to the cover letter accompanying Franco's TPP Agreement which states

---

10. See Footnote 8 *supra.*

that the Defendants had yet to "confirm [his] ... eligibility for the program." (Defs.' Mot. to Dismiss Ex. 2 at 3); (Defs.' Reply at 3). As such, the Defendants argue that the TPP Agreements made clear that the Defendants had yet to determine whether the Plaintiffs qualified for permanent loan modifications and that they were not entitled to permanent loan modifications unless the Defendants determined that they did in fact qualify. *Id.* at 4. The Defendants also argue that, in addition to determining whether the borrowers have complied with the terms of the TPP Agreements, they also had to separately determine whether the borrowers qualified for permanent loan modifications, emphasizing that there is a distinction between compliance and qualification. *Id.* The Defendants contend that the language of the TPP Agreements clearly indicates that the Plaintiffs were not entitled to modifications, but were subject to qualification by the Defendants. *Id.* at 5.

The Court agrees with the Defendants. The Plaintiffs place primary reliance on the verbiage of the opening paragraph, which declares that "[i]f [the Plaintiffs are] in compliance with this Trial Period Plan and [their] representations in Section 1 continue to be true in all material respects, then the Lender *will provide* [the Plaintiffs] with a Home Affordable Modification Agreement ..." (Compl. Ex. A; Defs.' Mot. to Dismiss Ex. 1) (emphasis added). However, the Court in *Wigod v. Wells Fargo Bank, N.A.,* No. 10–cv–2348, 2011 WL 250501, at *7, 2011 U.S. Dist. LEXIS 7314, at *20 (N.D.Ill. Jan. 25, 2011), reasoned that "[a plaintiff] could not reasonably have relied on just the opening statement [of the TPP Agreement] because it would have required her to ignore the remainder of the contract which required her to meet *all* of HAMP's require-

ments.... Accordingly, in light of the language of the Trial Period Plan as a whole, any reliance [the Plaintiff] placed on just the opening sentence was not reasonable ..." 2011 WL 250501, at *7, 2011 U.S. Dist. LEXIS 7314, at *20.

In the instant case, the TPP Agreements signed by the Plaintiffs contained multiple references to the discretion afforded to the Defendants in regards to offering Plaintiffs permanent loan modifications, and do not entitle the Plaintiffs to permanent loan modifications. In regards to Senter's mortgage specifically, Section 1 as quoted by Senter explicitly relies on Section 3, which reads, in pertinent part: "If ... the Lender determines that I qualify, the Lender will send me a Modification Agreement for my signature...." (Compl. Ex. A). The fact that the TPP Agreements use "distinctly contractual phrases" is not dispositive, since the plain language of the document does not support the assertion that the TPP Agreements contained all the elements of a contract and entitled the Plaintiffs to a permanent loan modification. The court in *Bourdelais* best articulated the position that this Court finds persuasive, as follows:

> The plain language of the TPP Agreement, however, belies [plaintiff's] claim.... Plaintiff promised to provide "documentation for all income", which the lender would use "to determine whether she qualified for the offer" of permanent loan modification, and the TPP Agreement made clear that Plaintiff might "not qualify" for the offer. The TPP Agreement's cover letter further emphasized the conditional nature of permanent modification, repeatedly stating that Plaintiff needed to qualify for the modification *and* comply with all terms of the TPP in order to receive a permanent modification.

*Bourdelais v. J.P. Morgan Chase Bank, N.A.*, No. 3:10–CV–670–HEH, 2011 WL 1306311 at *5, 2011 U.S. Dist. LEXIS 35507 at 15 (E.D.Va. Apr. 1, 2011). As such, the Plaintiffs' reliance on the opening paragraph was not reasonable, and the TPP Agreements' use of distinctly contractual phrases does not undermine the plain language of the agreement affording the Defendants discretion in extending permanent loan modifications to borrowers who qualified.

Additionally, the Court does not agree with the proposition in *Turbeville* that the mere fact that it is *possible* to interpret the TPP Agreements as simply affording the Lender discretion to assess the homeowner's compliance with the trial period does not necessarily prove that such an interpretation is plausible. There is a distinction between determining compliance with the TPP Agreement and determining whether a borrower is qualified for a permanent loan modification. Given the fact that the plain language of the document includes phrases such as "If . . . the Lender determines that I qualify," and "the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify . . . ," it appears that the *Turbeville* interpretation would require this Court to import significant terms into the understanding and interpretation of the TPP Agreement where none is needed. Since this Court finds that the TPP Agreements afforded the Defendants discretion to determine whether the Plaintiffs qualified for a permanent loan modification, rather than solely whether the Plaintiffs complied with the terms of the TPP Agreement, the Plaintiffs argument relying upon *Turbeville* fails since the TPP Agreements are not interpreted as vesting the Defendants with only the discretion to determine compliance with the terms of the TPP Agreement.

The Court is not persuaded by the Plaintiffs' attempt to distinguish the instant case from the eight federal cases cited by the Defendants on the grounds that the cited cases were individual actions and factually distinguishable. The cases cited by the Defendants are factually similar to the case at hand and mostly involve plaintiff actions against defendants for their failure to extend to plaintiffs a permanent loan modification after entering into TPP Agreements with such plaintiffs. Therefore, the decisions in these cases should not be ignored.

The Court disagrees with the Plaintiffs' interpretation of *Durmic* for the proposition that TPP Agreements generally may be viewed as enforceable contracts. The court in *Durmic* did not fully address the issue of whether the TPP Agreement was an agreement to provide the Plaintiffs with a loan at a specified date, but rather, decided not to address the issue since the court believed "the issue is one of the parties' intent, and cannot be resolved in the context of a motion to dismiss." *Durmic*, 2010 WL 4825632 at *4 (D.Mass.). Given the plain language of the TPP Agreements in the instant case, this Court is comfortable holding that the TPP Agreements are not agreements to provide the Plaintiffs with a loan at a specified date, but rather, an agreement governing obligations of both the Plaintiffs and the Defendants over a trial period after which the Defendants may extend a separate permanent loan modification should they determine that the Plaintiffs qualify.

*(ii.) Whether the Plaintiffs can rely on the HAMP Guidelines as evidence that the Defendants determined that they qualify for a permanent loan modification.*

The Defendants contend that the Plaintiffs improperly based their allegations

that the Plaintiffs were qualified for permanent loan modifications by the Defendants prior to entering into TPP Agreements on the U.S. Treasury's HAMP Guidelines. (Defs. Mot. to Dismiss at 8). Further, the Defendants argue that the Plaintiffs' reliance on the fact that they were offered a TPP Agreement as evidence that they qualified for a permanent loan modification results in the Plaintiffs improperly assuming that TPP Agreements were only extended to borrowers eligible for permanent loan modifications under the HAMP Guidelines. *Id.* Additionally, the Defendants argue that the TPP Agreements contain no language under which they contractually promise compliance with all of the HAMP Guidelines, and that any attempt to ground a contract claim on the HAMP Guidelines is an attempt to assert a private right of action under the HAMP. *Id.* at 8–9.

The Plaintiffs respond by contending that the Defendants, in their argument, ignored the important distinction between enforcing a bank's obligations under the HAMP and a bank's contractual agreement with a private consumer that arises from the bank's participation in the HAMP. (Pls.' Resp. at 13). The Plaintiffs argue that the Court may look to the HAMP and its Supplemental Directives as extrinsic sources providing meaning to the contractual terms agreed to by the parties to the TPP Agreements, and do not solely represent an attempt to assert a private right of action under the HAMP. *Turbeville,* 2011 U.S. Dist. LEXIS 42290, at *14, (Pls.' Resp. at 13). Lastly, the Plaintiffs argue that this is an "issue . . . of the parties' intent, and cannot be resolved in the context of a motion to dismiss." *Durmic,* 2010 WL 4825632 at *4, 2010 U.S. Dist. LEXIS 124603 at *15.

■ The Court disagrees with the Plaintiffs. The majority of courts have

agreed that the HAMP does not provide a borrower with a private right of action against the lender. *See Wigod,* 2011 WL 250501, at *4, 2011 U.S. Dist. LEXIS 7314, at *12. More specifically, these courts "reasoned that, in specifically providing for private actions against the Secretary of the Treasury but not against others, Congress demonstrated that it did not intend to create a private right of action for violation of HAMP against lenders that received HAMP funds." *Vida v. One West Bank, F.S.B.,* No. 10–987–AC, 2010 WL 5148473, at *4, 2010 U.S. Dist. LEXIS 132000, at *9 (D.Or. Dec. 13, 2010).

In the instant case, both of the Plaintiffs' TPP Agreements were private agreements between the Defendants and the Plaintiffs, and did not explicitly incorporate the terms of the HAMP Guidelines into the performance of the obligations articulated in the TPP Agreements. (Compl. Ex. A; Defs.' Mot. to Dismiss Ex. 1). Further, the TPP Agreements are of limited duration, and explicitly terminate prior to the extension of a permanent loan modification. *Id.* at § 2. As such, it is apparent that both the Plaintiffs and the Defendants intended the terms of the TPP Agreements, not the HAMP Guidelines, to govern their relationship over the limited duration of the trial period. Since there is no ambiguity in regard to the obligations of each party created by the TPP Agreements, this Court need not admit extrinsic evidence to provide meaning to the contractual terms of such agreements.

The Court does not find the Plaintiffs' distinction between enforcing a bank's obligations under the HAMP and a bank's contractual agreement with a private consumer that arises from the bank's participation in the HAMP convincing. The Plaintiffs' claims are couched primarily in

the guidance found in the HAMP Guidelines. *See* SD 09–01. More specifically, the Plaintiffs, in conclusory fashion, allege that the Defendants performed the NPV test required by the HAMP Guidelines prior to extending TPP Agreements to borrowers, (Pls.' Resp. at 7), and that the HAMP Guidelines provide the mathematical formulas for determining the permanent loan modification, leaving little discretion to the Defendants. *Id.* at 13. Because the Plaintiffs' aforementioned claims are premised primarily on the terms and procedures elaborated in the HAMP Guidelines, they are not sufficiently independent to state a separate state law cause of action for breach of contract. *See Vida*, 2010 WL 5148473, at *5, 2010 U.S. Dist. LEXIS 132000, at 12.

The Court also disagrees with the Plaintiffs' use of the *Turbeville* case for the proposition that the Court may look to the HAMP and its Supplemental Directives as extrinsic sources providing meaning to the contractual terms agreed to by the parties in the TPP Agreements. (Pls.' Resp. at 13). In the *Turbeville* case, the court looked to SD 09–01 in determining whether material terms of the permanent loan modification were missing, thus making the TPP Agreement an unenforceable agreement to agree. 2011 U.S. Dist. LEXIS 42290, at *14. The *Turbeville* court concluded that the "Plaintiffs' allegation that both parties accepted the predetermined HAMP modification terms when they signed the TPP Agreements is sufficiently plausible to survive the Defendant's Rule 12(b)(6) challenge." *Id.* This Court disagrees with the court in *Turbeville*. The TPP Agreements do not explicitly incorporate the terms of the HAMP Guidelines and, in fact, mention several times that the Defendants must determine if the Plaintiffs qualify for a permanent loan modification before they extend to them such a modification. Therefore, the Court need not look to the HAMP. or its Supplemental directives, to ascertain the meaning of the contractual terms of the TPP Agreements.

*(iii.) Whether the Plaintiffs can rely on the Defendants' alleged internal policy as evidence that the Defendants determined they qualify for permanent loan modifications.*

In their Complaint, the Plaintiffs allege that the Defendants maintained a policy of requiring borrowers to provide all information required to determine whether they qualify for permanent loan modifications prior to entering into a TPP Agreement, and therefore, it is likely that the Defendants, in extending to them TPP Agreements, determined that such borrowers qualify for permanent loan modifications. (Defs.' Mot. to Dismiss at 8). The Defendants argue that the Plaintiffs' allegations related to the Defendants' internal policies fail for four reasons. *Id.* First, the Plaintiffs' allegations fail to establish that the policy refers to qualifying borrowers for permanent loan modifications. *Id.* Second, the Plaintiffs fail to establish that the policy existed at the time they applied for their TPP Agreements. *Id.* Third, the policy requires only that the Defendants possess the information, not that the Defendants actually perform the NPV test before issuing a TPP Agreement. *Id.* Fourth, no language in the Plaintiffs' TPP Agreements incorporates the Defendants' internal policies and, therefore, the Plaintiffs cannot sue the Defendants for violation of their own policies. *Id.*

In response, the Plaintiffs argue that under SD 09–01, the Defendants were provided with two options in regard to qualify-

ing borrowers for permanent loan modifications: (1) the Defendants may use verbal financial information to assess eligibility under the HAMP with a subsequent review of the borrower's financial documentation, or (2) the Defendants may require the borrowers to submit the requisite documentation prior to preparing a TPP Agreement. SD 09–01 at 5; (Pls.' Resp. at 7). The Plaintiffs argue that because the Defendants required the submission of documentation, they chose the latter of the two options. (Pls.' Resp. at 6).

Additionally, the Plaintiffs contend that whether the Defendants performed an NPV test prior to extending TPP Agreements to the Plaintiffs is an issue of fact that cannot be resolved on a motion to dismiss. *Id.* at 7. Since the Defendants required all documentation necessary to perform an NPV test prior to entering into a TPP Agreement and not every delinquent homeowner was offered a TPP Agreement, the Plaintiffs argue that one can reasonably infer that the Defendants performed the NPV test and determined that each Plaintiff was eligible for a permanent loan modification prior to extending the TPP Agreements, precluding resolution via a motion to dismiss. *Id.*

The Plaintiffs also counter that the Defendants' assertion that the Plaintiffs may not be qualified for permanent loan modifications raises a factual dispute that cannot be resolved on a motion to dismiss. *Id.* at 8. The Plaintiffs argue that the fact that the Defendants offered TPP Agreements only to a subset of delinquent homeowners supports the reasonable inference that such homeowners were pre-screened for eligibility for a permanent loan modification, thus precluding resolution via a motion to dismiss. *Id.* Lastly, the Plaintiffs argue that pursuant to SD 09–01, the Defendants had until 60 days after issuing the TPP Agreement to make an eligibility determination, making those homeowners who did not receive a notice otherwise eligible for permanent loan modifications if they complied with the payment provisions and verified their income. (Pls.' Resp. at 8).

The Defendants respond to the Plaintiffs' arguments by establishing that the HAMP did not require that servicers verify a borrower's eligibility for a modification prior to extending TPP Agreement to borrowers until the program was amended by directive in January 2010. *See Morales v. Chase Home Fin. LLC,* No. 10–02068–JSW, 2011 WL 1670045, at *7–8, 2011 U.S. Dist. LEXIS 49698, at *20–21 (N.D.Cal. Apr. 11, 2011). The Defendants assert that the Plaintiffs, in arguing that it is a question of fact whether the Defendants performed an NPV test prior to entering into TPP Agreements, ignore that they themselves alleged that the Defendants were not required to make an eligibility determination until after issuing the TPP Agreements. (Compl. at ¶ 61).

The Court agrees with the Defendants. The Plaintiffs failed to allege that the Defendants were required to perform the NPV test before entering into a TPP Agreement with potential borrowers. Further, the Plaintiffs' argument relies on enforcing provisions of the HAMP, which represents an attempt to assert a private right of action under the HAMP where, as discussed *supra,* there is none.

For the foregoing reasons, the Court dismisses Count I for failure to state a claim.

## 2. Whether the Defendants' Failure to Extend a Permanent Modification to the Plaintiffs is a Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II).

■ The Plaintiffs allege that the Defendants breached the implied covenant of

good faith and fair dealing in failing to extend permanent loan modifications to the Plaintiffs. (Compl. at 33–34). "Under Florida law, every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations." *Centurion Air Cargo v. UPS Co.*, 420 F.3d 1146, 1151–52 (11th Cir.2005) (quotations omitted). However, "[a] breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Id.*

The Defendants move to dismiss Count II on the following grounds: (1) there can be no breach of the implied covenant of good faith and fair dealing because there is no valid contract, and (2) even if there is a valid contract, the Defendants did not act in bad faith.

■■■ First, the Defendants argue that since the Plaintiffs have not alleged a valid contract, they cannot state a claim for breach of the implied covenant of good faith and fair dealing. (Defs.' Mot. to Dismiss at 16). A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, and cannot be maintained under Florida law in the absence of a breach of an express term of a contract. *See Burger King Corp. v. E–Z Eating, 41 Corp.*, 572 F.3d 1306, 1313 n. 10 (11th Cir.2009) (Defs.' Mot. to Dismiss at 16). The Defendants contend that since the TPP Agreements do not create a contractual obligation to grant the Plaintiffs permanent loan modifications, the Plaintiffs' breach of covenant claim fails. *Id.*

In response, the Plaintiffs argue that the Complaint adequately alleges a claim for breach of contract under the TPP Agreements, and that the Defendants breached Section 1 of the agreements that expressly guarantees that the Plaintiffs will receive a permanent loan modification, which gives rise to their claim for breach of the implied covenant of good faith and fair dealing. (Pls.' Resp. at 15). The Plaintiffs further cite to *Durmic* for the proposition that "the covenant of good faith and fair dealing is better addressed in the context of jury instruction than in a motion to dismiss." *Durmic v. JPMorgan Chase Bank, N.A.*, No. 10–CV–10380–RGS, 2010 WL 4825632, at \*5, 2010 U.S. Dist. LEXIS 124603, at \*18 (D.Mass. Nov. 24, 2010).

Second, the Defendants argue that even if the TPP Agreements were considered valid contracts to provide permanent loan modifications to the Plaintiffs, the Defendants did not act in bad faith by (i) failing to provide the Plaintiffs with permanent loan modifications due to financial incentives, or (ii) requiring additional information in an attempt to comply with the HAMP's requirement for current information. (Defs.' Mot. to Dismiss at 16).

The Defendants argue that the U.S. Treasury itself did not "intend[ ] to prevent all foreclosures, but rather to encourage modification in those cases in which the value of a modification is greater than the value of a foreclosure." (Dec. 14, 2010 Congressional Report at p. 16). Therefore, the Defendants maintain that their failure to provide the Plaintiffs with permanent loan modifications in light of the Defendants' financial incentives was not bad faith. (Defs.' Mot. to Dismiss at 17). As such, the Defendants did not act in bad faith in complying with the intent of the HAMP.

The Defendants further argue that the HAMP Guidelines require them to update

outdated documents in order to prevent staling, and as such, their practice of requesting documentation from the Plaintiffs every 90 days could not constitute bad faith. *Id.* at 18.

The Plaintiffs contend that they entered into and complied with their TPP Agreements, while the Defendants engaged in a common course of conduct that entails stringing the Plaintiffs along with the promise of a permanent loan modification while making repeated demands for documentation that the Plaintiffs had already provided. (Pls.' Resp. at 15). Further, the Plaintiffs argue that the Complaint "detail[s] a series of defendant's actions and omissions that undermined its ability to perform under the TPP and meet plaintiffs' performance expectations ... [which] is sufficient to state a claim under the breach of the implied covenant of good faith and fair dealing." *Bosque v. Wells Fargo Bank, N.A.*, 762 F.Supp.2d 342, 353 (D.Mass.2011); (Pls.' Resp. at 15). At the very least, however, the Plaintiffs argue that the covenant of good faith and fair dealing would be better addressed in the context of jury instruction, rather than a motion to dismiss. *Durmic,* 2010 WL 4825632, at *5, 2010 U.S. Dist. LEXIS 124603, at *18, (Pls.' Resp. at 15–16).

The Court agrees with the Defendants. As discussed *supra,* the Plaintiffs failed to adequately plead that the TPP Agreements are valid contracts that entitle them to permanent loan modifications. Because a proper pleading of breach of the covenant of good faith and fair dealing necessarily requires the pleading of a valid contract, the Plaintiffs have failed to state a claim upon which relief can be granted. Since this Court finds that the Plaintiffs failed to allege a valid contract, it need not address the second grounds brought forth

by the Defendants that it did not act in bad faith.

For the foregoing reasons, the Court dismisses Count II for failure to state a claim.

### 3. Whether Plaintiffs Detrimentally Relied on Representations of the Defendants and Thus Plaintiffs are Entitled to Relief by Promissory Estoppel (Count III).

 The Plaintiffs allege that they relied on, to their detriment, representations made by the Defendants that they will provide qualified borrowers with permanent loan modifications, and thus should be entitled to relief via promissory estoppel. (Compl. at 34–35). In order to adequately plead a claim for promissory estoppel as an alternative basis for recovery, Florida law requires that a plaintiff establish:

(1) that the plaintiff detrimentally relied on a promise made by the defendant; (2) that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance on the part of the plaintiff or a third person; and (3) that injustice can be avoided only through the enforcement of the promise against the defendant.

*W.R. Grace & Co. v. Geodata Servs., Inc.,* 547 So.2d 919, 924 (Fla.1989).

The Defendants move to dismiss Count III on the following grounds: (1) the Defendants could not have reasonably expected the Plaintiffs to rely on a promise of permanent loan modification since the TPP Agreements repeatedly emphasized that no modification was guaranteed, and (2) the Plaintiffs have failed to plead that they suffered a detriment since they benefitted

from reduced monthly payments. (Defs. Mot. to Dismiss at 19).

First, the Defendants argue that they could not have reasonably expected the Plaintiffs to rely on a promise for a permanent loan modification because the TPP Agreements repeatedly emphasized that permanent modifications of the underlying loans were not guaranteed. *See Grill v. BAC Home Loans Servicing LP*, 2011 WL 127891, at *8, 2011 U.S. Dist. LEXIS 3771, at *21 (E.D.Cal. Jan. 13, 2011); *Wigod v. Wells Fargo Bank, N.A.*, 2011 WL 250501, at *7, 2011 U.S. Dist. LEXIS 7314, at *20 (N.D.Ill. Jan. 25, 2011); (Defs.' Mot. to Dismiss at 19). Second, even assuming that the TPP Agreements contained a promise to extend permanent loan modifications to the Plaintiffs, the Defendants argue that the Plaintiffs have failed to plead a detriment since they benefitted by being permitted to remain in their homes while making reduced mortgage payments. *Id.* Further, the Defendants assert that most of the detriments that the Plaintiffs allege in their complaint were required by their preexisting mortgages, and thus are not detriments in connection with the Plaintiffs' reliance on the purported promise. *Id.*

The Plaintiffs argue that the Complaint adequately and plausibly alleges a claim for promissory estoppel by alleging that the Plaintiffs relied on the Defendants' promise to provide permanent loan modifications to their detriment "in making trial payments, foregoing a short sale of their home, and agreeing to the accrual of mortgage servicing and other fees." (Compl. at ¶ 186). The Plaintiffs contend that other courts have sustained promissory estoppel claims under nearly identical facts, quoting *Jackson v. Ocwen Loan Servicing, LLC*, No. 2:10–cv–00711–MCE–GGH, 2011 WL 587587, at *3, 2011 U.S. Dist. LEXIS 12816, at 9–10 (E.D.Cal. Feb. 8, 2011), as follows:

> Plaintiffs have properly pled the elements for a promissory estoppel claim. They allege that Defendant promised to provide to them a loan modification upon completion of their obligations under the HAMP. This promise is clear and unambiguous from the written document provided. And because this document was in a writing signed by both parties, Plaintiffs' reliance on that promise was reasonably foreseeable as they acted in conformity with the express terms of the writing. Defendant's Motion to Dismiss Plaintiffs' third claim for promissory estoppel is denied.

*Id.*

In their reply, the Defendants emphasize that the Plaintiffs failed to address whether the Defendants could have reasonably expected the Plaintiffs to rely on a promise of a permanent loan modification in light of the repeated emphasis in the TPP Agreements that no modification was guaranteed. (Defs.' Reply at 9). The Defendants also contend that *Jackson* was not applicable to the instant case as it did not address whether the borrowers had to qualify for a permanent loan modification. 2011 WL 587587, at *3–4, 2011 U.S. Dist. LEXIS 12816, at *10 (E.D.Cal. Feb. 8, 2011). The Defendants conclude that since there was no unambiguous promise of permanent loan modification in the TPP Agreements, the Plaintiffs reliance was unreasonable.

As discussed *supra*, the Court agrees with the Defendants that the TPP Agreement does not promise a permanent loan modification to the Plaintiffs in exchange for their compliance with the terms of the

TPP Agreement. However, the Court's reading of the TPP Agreement indicates that the Defendants promised that they will enter into a permanent loan modification with the Plaintiffs if the Defendants determined that they were qualified. This necessarily implies a promise that the Defendants will reasonably take steps to determine whether the Plaintiffs are qualified [11] and then, if found to be so qualified, the Defendants would enter into a permanent loan modification with them.

Per the terms of the TPP Agreement, the trial period lasted approximately three months. Section 2 of Senter's TPP Agreement defines the trial period as follows, "[the Plaintiff] agree[s] that during the period commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due or (ii) termination of this Plan [the following representations are true]...." (Compl. Ex. A, ¶ 2). Further, Section 3 of Senter's TPP Agreement borrower qualifies, as follows:

> If (1) my representations in Section 1 were and continue to be true in all material respects; (2) I comply with the requirements in Section 2; (3) I provide the Lender with all required information and documentation; and (4) *the Lender determines that I qualify*, the Lender will send me a Modification Agreement for my signature . . . .

*Id.* at ¶ 3. Therefore, it would be reasonable for Plaintiffs to believe that the Defendants promised to make the determination of qualification for a permanent loan modification upon expiration of the TPP Agreements. Since Section 2 establishes a fixed term for the trial period, and Section 3 establishes the conditions for a modification, including the Lender's determination of qualification, it would be reasonable for the Plaintiffs to believe that the natural occurrence of such determination would be, at the latest, the expiration of the TPP Agreement.

While the Plaintiffs have not alleged the promises in this way in their Complaint, the Court will allow the Plaintiffs to amend their Complaint in accordance with this Order to re-allege its count of promissory estoppel. Specifically, in regard to Senter, it is unclear whether the Defendants ever determined whether she qualified, while, in regard to Franco, it is unclear whether the Defendants made the determination of qualification at the appropriate time. This is an issue that cannot be resolved without discovery in a motion to dismiss, since the Plaintiffs do not have access to the internal documents of the Defendants whereby they made the determination of whether the Plaintiffs were qualified or not to receive a permanent loan modification.

The Court notes that at this stage of the litigation, without the benefit of discovery, it cannot be determined whether the Defendants took any steps to determine whether the Plaintiffs qualify, and accordingly dismissing the count with prejudice would be inappropriate at this stage.

Accordingly, Count III is hereby dismissed without prejudice, with leave to amend.

### 4. Whether Defendants Were Unjustly Enriched at the Expense of Plaintiffs (Count IV).

 The Plaintiffs allege that as a result of the Defendants' conduct, the De-

---

**11.** It is important to note that the qualification promised by Defendants in the TPP Agreements is not necessarily the NPV calculation established by the HAMP, but rather, some form of reasonable calculation or determination of qualification.

fendants have been unjustly enriched by accruing fees, interest and penalties in addition to payments made pursuant to the TPP Agreements. (Compl. at 35). In order to adequately plead a claim for unjust enrichment under Florida Law as an alternate basis for recovery, a plaintiff must plead the following elements: "1.) [that t]he plaintiff has conferred a benefit on the defendant, who has knowledge thereof; 2.) [that t]he defendant voluntarily accepts and retains the benefit conferred; and 3.) [that t]he circumstances are such that it would be inequitable for the defendant to retain the benefit without paying for it." *Shibata v. Lim*, U.S. Dist. LEXIS 20053, at *9 (M.D.Fla. Nov. 15, 2000) (citations omitted).

The Defendants move to dismiss Count IV on the following grounds: (1) since the Plaintiffs' obligation to pay fees, interest, penalties, and monthly payments originated with the Plaintiffs' mortgage contracts, no equitable remedy is available, and (2) since the Defendants were already entitled to the retention of fees, interest, penalties, and monthly payments pursuant to the Plaintiffs' mortgages, it is not inequitable for the Defendants to retain such benefits.

First, the Defendants argue that unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy. *See Bowleg v. Bowe*, 502 So.2d 71, 72 (Fla. 3d DCA 1987). The Defendants argue that any fees, interest, penalties, and payments due to them were authorized by the mortgages between the Defendants and the Plaintiffs, and as such, the Plaintiffs' claim represents a breach of contract claim rather than an unjust enrichment claim, and should be dismissed. (Defs.' Mot. to Dismiss at 20).

Second, the Defendants argue that the Plaintiffs failed to prove that under the circumstances it would be inequitable for the Defendants to retain the benefits without paying the value thereof. *Turner v. Fitzsimmons*, 673 So.2d 532, 536 (Fla. 1st DCA 1996); (Defs.' Mot. to Dismiss at 20). The Defendants emphasize that courts have dismissed similar unjust enrichment claims based on the theory that the servicers were entitled to the benefits they received pursuant to the borrowers' mortgages. *E.g. Lawson v. Ocwen Loan Servicing, LLC*, No. C10–5481–BHS, 2011 WL 564376, at *4–5, 2011 U.S. Dist. LEXIS 12125, at *13 (W.D.Wash. Feb. 8, 2011); (Defs.' Mot. to Dismiss at 20). The Defendants contend that since they were entitled to the interest, fees, penalties and payments that they received pursuant to the Plaintiffs' mortgages, the Plaintiffs have failed to prove that it would be inequitable for the Defendants to retain the benefits of such payments. *Id.*

The Plaintiffs argue that they have adequately plead unjust enrichment by alleging that the Defendants continued to demand and the Plaintiffs continued to make mortgage payments under the TPP Agreements which were not applied towards payment of their mortgages, while the Defendants unlawfully collected and retained default interest, additional fees, and penalties, causing the Plaintiffs financial damage and unjustly enriching the Defendants. (Pls.' Resp. at 17). Further, the Plaintiffs argue that the Defendants would not have received these financial benefits had they not entered into the TPP Agreements with the Plaintiffs which the Defendants had no intention of honoring and then foreclosing on the properties after capitalizing various costs, fees and default interest. *Id.*

The Court agrees with the Defendants. The Plaintiffs have failed to adequately plead that the circumstances of the instant

case are such that it would be inequitable for the Defendants to retain the benefit of the default interest, fees, penalties, and monthly payments without paying for it. The Plaintiffs have adequately plead that, to their knowledge, (1) they conferred a benefit upon the Defendants in the form of accrued fees, interest, and monthly payments; and (2) the Defendants voluntarily accepted such benefits by participating in the TPP Agreements with the Plaintiffs. However, because the Plaintiffs were legally obligated under their mortgages to pay default interest, fees, and penalties, in addition to larger monthly payments than those made under the TPP Agreements, the Plaintiffs have failed to plead that the retention of such benefits by the Defendants would be unjust.

For the foregoing reasons, the Court dismisses Count IV for failure to state a claim.

### III. *CONCLUSION*

Accordingly, for the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants JPMorgan Chase Bank, N.A. and Chase Home Finance, LLC's Motion to Dismiss Plaintiffs' Complaint with Prejudice [DE–15] is hereby **GRANTED in part;**

2. Counts I, II, and IV are hereby **DISMISSED with prejudice;**

3. Count III is hereby **DISMISSED without prejudice,** with leave to amend;

4. A Second Amended Complaint shall be filed on or before September 9, 2011.