OPINION OF THE COURT
Thomas F. Whelan, J.
It is ordered that this motion (No. 001) by the llardo defendants for summary judgment dismissing this mortgage foreclosure action and directing the plaintiff to modify its mortgage in accordance with the terms of a trial period modification plan offered by the plaintiff under the Federal Home Affordable Modification Program (HAMP) and an order “waiving” all interest accrued on the loan from implementation of the HAMP offer to the resolution of this action and “expunging any alleged deficiencies in payment” is denied.
This mortgage foreclosure action arises out of a mortgage given by the llardo defendants on August 23, 2004 to secure a $320,000 mortgage loan in connection with the purchase of residential real property situated in Centerport, New York. The complaint was filed on July 13, 2011, in response to which the llardo defendants filed an answer with counterclaims. That answer was amended by the defendants’ service of an amended *362 answer with counterclaims dated September 16, 2011, in response to which the plaintiff replied in October of 2011.
On December 7, 2011, the answering defendants served the instant motion in which they seek a judicially imposed loan modification and other relief. The defendants claim an entitlement to such relief under the terms of a trial plan program loan modification (hereinafter TPP) to which the parties agreed in September of 2009. The llardos further claim an entitlement to such relief by reason of the deceptive and bad faith conduct on the part of the plaintiff and its representatives in corresponding with the llardos in connection with their unsuccessful attempts to secure a permanent modification of the subject loan and the plaintiffs bad faith and prejudicial conduct in prosecuting this action other than in accordance with court rules and notions of fairness and justice. The llardos urge this court to apply principles of contract law and/or invoke this court’s equity powers and issue an order that (1) compels the plaintiff to provide the defendants with a permanent loan modification as of October 1, 2009 providing for a reduced monthly payment in the amount set forth in the trial program implemented by the parties during the last three months of 2009; (2) eradicates all interest and deficits in payment that accrued under the original loan documents; and (3) dismisses this foreclosure action.
Underlying these demands for relief are the following factual allegations, all of which are advanced in the affidavit of defendant, Dina llardo, that is attached to the moving papers. In August of 2004, the llardo defendants purchased their home with the aid of the $320,000 mortgage that is the subject of this action and they regularly paid the monthly installment due for principal, interest, taxes, insurance and escrow from the loan’s inception until May of 2009. At that time, the llardos were experiencing difficulties in meeting their financial responsibilities and began a 27-month pursuit of a modification of their mortgage loan. The llardos missed their first mortgage payment on August 1, 2009, allegedly at the direction of the plaintiff’s agents.
In the month preceding the August 1, 2009 default, Dina llardo was purportedly told by agents of Chase Bank, the loan servicer, to “stop paying” the mortgage (see 1Í12 of the llardo affidavit). Such advice was allegedly issued when Ms. llardo called Chase in July of 2009 to follow up on a buyer’s assistance form completed by her in May of 2009 in connection with her initial efforts to secure a mortgage loan modification. Ms. llardo *363 claims that she was told that a loan default was a necessary element of eligibility for a loan modification.
On or about September 1, 2009, the llardos received correspondence from Chase advising them that they were past due on the August installment. Ms. llardo “immediately” called Chase and “was assured not to worry because we were now in a temporary modification program,” the “specific amounts of which were confirmed in that conversation” (see H 14 of the llardo affidavit). On September 10, 2009, the llardos received written confirmation of a Home Affordable Modification Trial Period Plan (TPP) from Chase in which a three-month, trial term period was scheduled to begin on October 1, 2009. The plan provided for a reduction of the llardos’ monthly installment payments from $2,432 to $1,953. The llardos believed that if they paid the three trial payments beginning on October 1, 2009 and ending on December 1, 2009, Chase would provide them with a Home Affordable Modification Agreement (see H 16 of the llardo affidavit).
The llardos allege that they timely made the trial payments and that they continued to pay the reduced monthly installment following the expiration of the trial term for “months” even though Chase advised them that they were in arrears. In response, Dina llardo called Chase three times in January of 2010 and was allegedly told “not to worry” since they were in “a loan modification” (see 1Í1Í18-19 of the llardo affidavit). On February 11, 2010, Ms. llardo was advised by “Cindy” at Chase that “our application was still in review but that Chase may have to place us in a different program” (see 1i 20 of the llardo affidavit). According to Ms. llardo, she continued to converse with Chase representatives through July of 2010 and continued to send to them financial documentation in connection with obtaining a loan modification under programs other than the HAMP program which provided the three-month TPP beginning in October of 2009.
On January 12, 2011, Chase returned the llardos’ monthly payment (see H 25 of the llardo affidavit). The llardos continued to receive notices from Chase advising of loan deficiencies (see 11 28 of the llardo affidavit). Ms. llardo nevertheless claims that she was only notified by letter dated June 1, 2011 that Chase was unable to offer a HAMP loan modification or a modification under any Chase modification programs (see H 31 of the llardo affidavit). The llardos made no further payments to Chase following receipt of that letter (see H 27 of the llardo affidavit). *364 Undaunted by these circumstances, Ms. llardo continued to pursue loan modification possibilities with Chase until August 23, 2011 (see 1Í1Í 33-34 of the llardo affidavit).
The plaintiff challenges the accuracy and completeness of Ms. llardo’s narrative of the conversations she purportedly had with Chase. Such challenges are premised on the self-serving and unsubstantiated nature of Ms. llardo’s factual allegations regarding her dialogue with Chase representatives. The plaintiff also points to a glaring omission on the part of Ms. llardo and her counsel in failing to mention or include a copy of Chase’s April 27, 2010 rejection letter. Therein, Chase advised the llardos that it was unable to offer a HAMP modification because the llardos’ housing expense was less than 31% of the gross monthly income and that they did not qualify for a modification under any programs offered by Chase, including the Making Homes Affordable program to which the defendants were first referred in February of 2010. The April 27, 2010 rejection letter references the trial plan documentation and advises that delinquencies in the loan must be addressed to avoid the “negative impact a possible foreclosure may have on your credit rating, the risk of a deficiency judgment being filed against you and the possible adverse tax effects of a foreclosure on your Property.” The plaintiff further challenges Ms. llardo’s claim that bank representatives advised her that she had to be in default under the terms of her loan to qualify for a loan modification since the TPP documentation itself clearly provides otherwise. The plaintiff also contests the merits of the defendants’ claims for dismissal of this action, reinstatement of the trial modification as of the date of its inception on October 1, 2009 and a waiver of all interest and an expungement of all loan deficiencies under HAMP or the common-law theories advanced by the defendants.
Without denying the existence of the plaintiffs April 27, 2010 rejection letter or the accuracy of the assertion set forth therein that the llardos’ housing expense was 26% of their gross monthly housing income and thus less than the 31% required for a positive net present value (NPV) result, the defendants claim that their right to a permanent loan modification upon the same terms as the trial modification rests upon the language of the TPP itself. In support of this claim, the llardos rely upon the following language set forth on page two of the TPP:
“If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be *365 true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.”
The llardos thus contend that under HAMP and principles of contract law and the law governing waiver and estoppel, the court should mandate that the plaintiff permanently modify the loan by reinstating the terms of the TPE In opposition to these arguments, the plaintiff contends that it was not required to permanently modify the mortgage loan if it determined during the trial period that the borrower did not meet the requirements under HAMP for a modification. In support of these contentions, the plaintiff cites the following language from the Trial Period Plan:
“I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until: (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.”
As an alternate ground for the granting of this motion, the defendants assert that the plaintiff engaged in outrageous and deceptive conduct and has acted in such bad faith that the defendants are entitled to a judicially mandated loan modification. As legal authority for this position, counsel assiduously relies on a decision issued in a mortgage foreclosure proceeding in this court in the case of Wells Fargo Bank, N.A. v Meyers (30 Misc 3d 697 [Sup Ct, Suffolk County 2010, Sweeney, J.]). Therein, the Meyers defendants were offered a TPP under HAMP and performed by paying the reduced monthly installments for the three-month trial period. Immediately following the start of that trial period, the bank instituted the foreclosure action. The case was assigned to the specialized mortgage foreclosure conference part and referred to Acting Justice Sweeney after the plaintiff steadfastly declined to offer the defendants a permanent modification of their mortgage loan over the course of four settlement conferences in the conference part. When the plaintiff again refused to modify the loan at conferences before Acting Justice Sweeney, a hearing on the issue of the plaintiffs *366 “bad faith” was scheduled. Following that hearing, the court issued the order reported above in which the plaintiff was directed to specifically perform “the original modification agreement proposed by the plaintiff and accepted by the defendants” (id. at 701). The court went on to dismiss the foreclosure action. In granting such relief, which was issued sua sponte, as the defendants had not interposed an answer or any other paper demanding affirmative relief, the court resorted to its equitable powers to bring about the result imposed.
The facts as alleged by Ms. llardo in this action are remarkably similar to those set forth in the Meyers decision except that the plaintiff here did not commence this foreclosure action prior to the issuance of a determination as to the ineligibility of the borrowers for a HAMP modification. This court nevertheless declines to adopt the reasoning of the Meyers court or to otherwise concur in its result. Nor is this court persuaded that the remedies demanded are otherwise available to the defendants under HAMP state contract law or principles of waiver and/or estoppel. For these reasons and those outlined below, the court finds that the defendants are not entitled to the relief demanded on this motion.
The HAMP Program
The Home Affordable Modification Program or HAMP is a federal program that arose out of the Emergency Economic Stabilization Act of 2008 and the Helping Families Save Their Homes Act (Helping Families Act) of May of 2009. The HAMP program is administered by the Federal National Mortgage Association (Fannie Mae) as the agent of the Department of the Treasury. The program’s aim is to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable reduced levels, without discharging any of the underlying debt. Under HAMP loan servicers are provided with incentive payments for issuing permanent loan modifications and it requires that all mortgage loans owned or guaranteed by Fannie Mae or the Federal Home Loan Mortgage Corporation (Freddie Mac and, together with Fannie Mae, the government-sponsored entities or GSEs) that meet certain requirements be evaluated by the loan servicers for loan modifications.
Although participation in HAMP is required for government-sponsored entities (GSEs) such as Fannie Mae and Freddie Mac, HAMP participation is voluntary for non-GSEs. Non-GSE servicers who elect to participate (participating servicers) are *367 required to enter into a Servicer Participation Agreement (SPA) with the federal government. These agreements provide that they are governed by and must be construed under federal law (see Marshall and DeStefano III, Lenders Prevail in Lawsuits by Borrowers Seeking to Enforce Federal Loan Modification Programs, Pratt’s J Bankr L, Sept. 2010, available on Westlaw at JBKRL 2010.09-5 at 4). The plaintiff here is a participant in HAMP The HAMP SPAs also contain provisions recognizing that many loans are securitized and held by a disparate pool of investors under the terms of pooling and servicing agreements (PSAs), many of which prohibit modification so as to protect the subordinate security holders. Since many loan servicers are bound by such preexisting PSAs with the investors, the HAMP Guidelines do not require servicers to consider loans for HAMP modification where prohibited by the rules of the applicable PSA and/or other investor servicing agreements. If the loan is not investor-owned or if the investor consents to modification, the loan is evaluated for HAMP eligibility (see Edwards v Aurora Loan Services, LLC, 791 F Supp 2d 144 [D DC 2011]).
The guidelines and supplemental directives issued by Fannie Mae set forth HAMP activities servicers must perform and all modification eligibility guidelines. The guidelines set forth basic eligibility criteria and require the servicer to perform a net present value analysis, comparing the NPV of a modified loan to the NPV of an unmodified loan. The servicer is required to apply a sequence of steps, the “Standard Modification Waterfall,” to evaluate a hypothetical loan modification that would lower the borrower’s payment to no greater than 31% of the borrower’s gross monthly income. The standard modification waterfall includes the steps of reducing the interest rate in increments of .125% down to the floor interest rate of 2%, extending the term of the loan, and forgiving principal. If the NPV result for the modification scenario is greater than the NPV result for no modification, the result is deemed “positive” and the servicer should offer the modification. If the NPV result for no modification is greater than the NPV result for the modification scenario, the modification result is deemed “negative” and the servicer has the option of performing the modification in its discretion (see id. at 149).
Prior to June 1, 2010, servicers were permitted to rely upon borrowers’ unverified verbal representations when determining whether the borrower qualified for a TPP (see US Dept of the Treasury, Supplemental Directive 09-01, at 6-7). Borrowers who *368 entered into TPPs on that basis were then required to submit income verification documentation, which servicers were required to analyze to determine whether the borrower qualified for a permanent modification (id.). Although this TPP-first, verification-later procedure allowed servicers to expedite the TPP process and quickly provide relief to struggling homeowners, it resulted in some borrowers who were offered TPPs being found ineligible for permanent modifications. To remedy this issue, the Treasury on January 28, 2010 issued a supplemental directive which, effective June 1, 2010, requires servicers to fully verify a borrower’s financial information before offering a TPP (see US Dept of the Treasury, Supplemental Directive 10-01). The defendants in this case applied for a loan modification under the old guidelines.
HAMP Litigation in the Federal Courts
Borrowers rejected for loan modifications began to file federal lawsuits in which they claimed a constitutionally protected property right to permanent modifications under HAMP and its guidelines and other federal statutes and regulations. In a 2009 case entitled Williams v Geithner (2009 WL 3757380, 2009 US Dist LEXIS 104096 [D Minn 2009]), a federal district court addressed the issue in great detail and found that there is no entitlement to a loan modification under HAMP The plaintiffs’ claims that the servicers’ failure to notify them of adverse HAMP decisions violated their due process rights were rejected on the ground that there is no cognizable property interest in loan modifications (see 2009 WL 3757380 at *7, 2009 US Dist LEXIS 104096 at *21-22). The court’s findings were premised on, among other things, the absence of mandatory language in the statutory and program framework and its inclusion of discretion vested in plan participants. In this regard the court noted as follows:
“Loan servicers seek to maximize their investments, and in doing so, make profitability determinations between modification or foreclosure, based in part on predictions about an individual borrower’s likelihood of default. If the Secretary prescribed the exact criteria all servicers must use to determine whether a loan has a positive NPV (and therefore should be modified if the other criteria are satisfied) then servicers may choose to forego participating in the HAMP program so that they are not forced to modify loans that do not make financial sense. While Congress required the Secretary to implement a *369 plan to assist distressed homeowners, that plan not only made servicer participation voluntary, but also afforded to program participants discretion on several variables that impact the NPV determination” (2009 WL 3757380 at *7, 2009 US Dist LEXIS 104096 at *21-22).
The court in Williams went on to hold that “loan modifications are not an entitlement, but are linked to decisions that result in profits to taxpayers. Congress did not intend to mandate loan modifications” (2009 WL 3757380 at *6, 2009 US Dist LEXIS 104096 at *18).
In a plethora of federal cases decided after Williams, federal courts have held that HAMP only requires participating servicers to consider eligible loans for modification but does not require servicers to modify eligible loans (see Lucia v Wells Fargo Bank, N.A., 798 F Supp 2d 1059 [ND Cal 2011]; Marks v Bank of Am., N.A., 2010 WL 2572988, 2010 US Dist LEXIS 61489 [D Ariz 2010]; Escobedo v Countywide Home Loans, Inc., 2009 WL 4981618, 2009 US Dist LEXIS 117017 [SD Cal 2009]). In Hart v Countrywide Home Loans, Inc. (735 F Supp 2d 741, 747-748 [2010]), a District Court in the Eastern District of Michigan stated the rule as follows:
“The language of the HERA [Housing and Economic Recovery Act of 2009] requires the Secretary of the Treasury ‘to encourage the servicers of the underlying mortgages, considering net present value to the taxpayer, to take advantage of the HOPE for Homeowners Program.’ 12 U.S.C. § 5219. While the Secretary must encourage mortgage servicers to modify loans, the statute does not require Defendant or other mortgage servicers to modify loans. See Escobedo v. Countrywide Home Loans, Inc., No. 09cvl557 BTM(BLM), 2009 WL 4981618, at *3 (S.D-.Cal. Dec. 15, 2009) (‘The [SPA] Agreement does not state that Countrywide must modify all mortgages that meet the eligibility requirements.’); Williams v. Geithner, No. 09-1959 ADM/JJG, 2009 WL 3757380, at *6 (D.Minn. Nov. 9, 2009) (concluding that loans may be modified where appropriate and with discretion). Therefore, even if Plaintiff were eligible for modification, there would be no duty imposed on Defendant for which Plaintiff could seek relief.”
Borrowers’ claims of a private right of action under HAMP and their breach of contract claims as third-party beneficiaries *370 of SPAs between servicers and Fannie Mae have been repeatedly rejected by federal courts (see Ramos v Wells Fargo Home Mtge., 2012 WL 261308, 2012 US Dist LEXIS 9770 [D Md 2012]; Keosseian v Bank of Am., 2012 WL 458470, 2012 US Dist LEXIS 16811 [D NJ 2012]; Steffens v American Home Mtge. Servicing, Inc., 2011 WL 901812, 2011 US Dist LEXIS 26586 [D SC 2011]; Bourdelais v J.P. Morgan Chase, 2011 WL 1306311, 2011 US Dist LEXIS 25507 [ED Va 2011]; Grill v BAC Home Loans Servicing LP, 2011 WL 127891, 2011 US Dist LEXIS 3771 [ED Cal 2011]; Zoher v Chase Home Fin., 2010 WL 4064798, 2010 US Dist LEXIS 109936 [SD Fla 2010]; Robinson v Wells Fargo Bank, N.A., 2010 WL 2534192, 2010 US Dist LEXIS 60648 [D Ariz 2010]; Escobedo v Countrywide Home Loans, Inc., supra). In October of 2011, a circuit court of appeals finally weighed in on the issue and likewise held that nothing in HAMP expressly or impliedly provides borrowers with a private right of action for a loan modification (see Nelson v Bank of Am., N.A., 446 Fed Appx 158 [11th Cir 2011]).
In an effort to avoid these results, borrowers who successfully participated in trial modifications under HAMP increasingly began to assert common-law contract claims based on their TPP agreements. However, many federal courts have rejected these claims as being nothing more than HAMP claims dressed in the verbiage of commonlaw breach of contract claims (see Hemmenway v Wells Fargo, N.A., 2012 WL 512398, 2012 US Dist LEXIS 18839 [D Or 2012]; Keosseian v Bank of Am., supra; Parks v BAC Home Loan Servicing, LP, 2011 WL 5239240, 2011 US Dist LEXIS 125920 [ED Va 2011]; Wittkowski v PNC Mtge., 2011 WL 5838517, 2011 US Dist LEXIS 133464 [D Minn 2011]; Herold v U.S. Bank, N.A., 2011 WL 4072029, 2011 US Dist LEXIS 103501 [D Ariz 2011]; Senter v JPMorgan Chase Bank, N.A., 810 F Supp 2d 1339 [SD Fla 2011]; Bourdelais v J.P. Morgan Chase, supra; Wigod v Wells Fargo Bank, N.A., 2011 WL 250501, *5, 2011 US Dist LEXIS 7314, *13-14 [ND Ill 2011]; Cox v Mortgage Elec. Registration Sys., Inc., 794 F Supp 2d 1060 [D Minn 2011]; Vida v One West Bank, F.S.B., 2010 WL 5148473, *4, 2010 US Dist LEXIS 132000, *9-11 [D Or 2010]).
Other federal courts held that state common-law claims of a contractual entitlement to a permanent loan modification may be viable (see Gaudin v Saxon Mtge. Servs., Inc., 2011 WL 5825144, 2011 US Dist LEXIS 132957 [ND Cal 2011]; Allen v CitiMortgage, Inc., 2011 WL 3425665, 2011 US Dist LEXIS 86077 [D Md, Aug. 4, 2011]; Hinton v Well Fargo Bank, N.A., *371 2011 WL 3652321, 2011 US Dist LEXIS 92560 [ED Va 2011]; Stovall v SunTrust Mtge., Inc., 2011 WL 4402680, 2011 US Dist LEXIS 106137 [D Md 2011]; Bosque v Wells Fargo Bank, N.A., 762 F Supp 2d 342 [D Mass 2011]; Durmic v J.P. Morgan Chase Bank, NA, 2010 WL 4825632, 2010 US Dist LEXIS 124603 [D Mass 2010]), and that such claims are not preempted under HAMP or other federal statutes (see Olivares v PNC Bank, N.A., 2011 WL 4860167, 2011 US Dist LEXIS 118338 [D Minn 2011]; Darcy v CitiFinancial, Inc., 2011 WL 3758805, 2011 US Dist LEXIS 95238 [WD Mich 2011]; Fletcher v OneWest Bank, FSB, 798 F Supp 2d 925 [ND Ill 2011]; Wright v Chase Home Fin., LLC, 2011 WL 4101513, 2011 US Dist LEXIS 104307 [D Ariz 2011]; Allen v CitiMortgage, Inc., supra). However, most courts have rejected claims that either a HAMP application or a TPP constitutes a binding contract for permanent modification under controlling state law principles (see Mclnnis v BAC Home Loan Servicing, LP, 2012 WL 383590, 2012 US Dist LEXIS 13653 [ED Va 2012]; Pennington v HSBC Bank USA, Natl. Assn., 2011 WL 6739609, 2011 US Dist LEXIS 147411 [WD Tex 2011]; Lonberg v Freddie Mac, 776 F Supp 2d 1202 [D Or 2011]; Lund v CitiMortgage, Inc., 2011 WL 1873690, 2011 US Dist LEXIS 52890 [D Utah 2011]; Parks v BAC Home Loan Servicing, LP, 2011 WL 5239240, 2011 US Dist LEXIS 125920 [2011] [modification application not a contract]; Steffens v American Home Mtge. Sevicing, Inc., supra [modification application not a contract]; Reyna v Wells Fargo Bank, N.A., 2011 WL 2690087, 2011 US Dist LEXIS 74456 [D Nev 2011]; Rackley v JPMorgan Chase Bank, Natl. Assn., 2011 WL 2971357, 2011 US Dist LEXIS 79323 [WD Tex 2011]; Stovall v SunTrust Mtge., Inc., supra; Senter v JPMorgan Chase Bank, N.A., supra; Grill v BAC Home Loans Servicing LP, supra; Herold v U.S. Bank, N.A., supra; Bourdelais v J.P. Morgan Chase, supra; Marks v Bank of Am., N.A., supra; cf. Gaudin v Saxon Mtge. Servs., Inc., supra; Bolone v Wells Fargo Home Mtge., Inc., 2011 WL 3706600, 2011 US Dist LEXIS 94714 [ED Mich 2011]; Darcy v CitiFinancial, Inc., supra; Bosque v Wells Fargo Bank, N.A., supra; Durmic v J.P. Morgan Chase Bank, N.A, supra).
Rejection of state breach of contract claims premised upon a TPP rests upon various failings. Some courts hold that since there is no duty to modify a loan and no unqualified promise to do so under the terms of the TPP, there is no enforceable contract (see e.g. Mclnnis v BAC Home Loan Servicing, LP, supra; Pennington v HSBC Bank USA, Natl. Assn., supra [there *372 being no obligation to modify the loan, the TPP offer was merely to consider the plaintiffs application for a loan modification, not a definite pledge or promise to modify the plaintiffs mortgage]; see also Senter v JPMorgan Chase Bank, N.A., supra [adding as grounds a failure of consideration as well as the unenforceable nature of the TPP as a mere agreement to agree in the future]).
In Thomas v JPMorgan Chase & Co. (811 F Supp 2d 781 [2011]), a New York federal district court in the Southern District, applying New Jersey law, addressed the merits of the plaintiffs’ state claims sounding in a breach of the TPP on the part of the bank. However, the court found that the TPP did not constitute a binding contract for permanent modification due to the borrowers’ failure to satisfy all conditions for a permanent loan set forth in the TPP and that consideration for any such modification was lacking. In addition, the court found that no breach of any affirmative obligation on the part of the bank under the TPP had occurred (see id. at 796). Within a month of the issuance of the decision in Thomas, the Southern District of New York also found that a TPP does not constitute a binding contract for permanent modification due to a failure of consideration and that no breach of any affirmative obligation on the part of the bank under the TPP had occurred (see Costigan v CitiMortgage, Inc., 2011 WL 3370397, 2011 US Dist LEXIS 84860 [2011]). Upon application of both federal and New Jersey law, the court rejected Costigan’s claims of breach of contract, promissory estoppel, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation, negligent processing of loan modifications and foreclosures and violations of state consumer protection practices.
Following Costigan, two decisions issued out of the Federal District Court of New Jersey likewise addressed the merits of the borrowers’ state law claims based on purported breaches of the TPP and related tort claims and rejected those claims as unmeritorious (see Stolba v Wells Fargo & Co., 2011 WL 3444078, 2011 US Dist LEXIS 87355 [2011]; Keosseian v Bank of Am., supra). However, in a more recent case, a district court in the Eastern District of New York denied an accelerated dismissal of the borrowers’ New York state law claims sounding in breach of contract predicated upon a TPP and other state law claims, although the TPP at issue therein was not before the court (see Picini v Chase Home Fin. LLC, 2012 WL 580255, 2012 US Dist LEXIS 22502 [Feb. 16, 2012]).
*373 HAMP Litigation in New York
In contrast to the federal courts, HAMP litigation in New York courts has yielded fewer than 20 reported decisions, only two of which emanate from appellate courts. In Aames Funding Corp. v Houston (85 AD3d 1070 [2011]), the Second Department granted the borrower’s application to stay a scheduled foreclosure sale since the plaintiff bank was precluded from referring any loan to foreclosure and from conducting a foreclosure sale under a HAMP Supplemental Directive 10-02 issued on March 24, 2010 with respect to any borrowers whose ineligibility for a modification had not been determined. In Bank of Am., N.A. v Tornheim (82 AD3d 1141 [2011]), the Second Department declined to dismiss a recently commenced foreclosure action since the defendants’ demands therefor were predicated upon an unfounded claim that the Helping Families Act created a moratorium on foreclosure actions. While the Helping Families Act of May 20, 2009 led to a variety of new federal measures designed to reduce foreclosures, preserve home ownership and fight the contraction of the real estate market, the court expressly found that the act did not create a moratorium on mortgage foreclosure actions and that the provision relied upon by the defendants is “merely precatory and does not create an enforceable private right” (see id.). The remaining reported decisions referencing HAMP are trial court decisions, none of which appear to have an import on the issues raised herein other than the decision the Meyers case, upon which the llardo defendants rely.
Analysis
This court finds that the llardos’ claims of an entitlement to a permanent modification of their mortgage loan under the terms of their TPP and by reason of their due and timely fulfillment of their obligations to pay, during the three-month trial period, reduced monthly installments are without merit under federal law. As indicated above, various federal courts have held that qualified borrowers may not reasonably rely upon an SPA between servicers and Fannie Mae as manifesting an intention to confer a right upon them because the SPA does not require the servicer to modify eligible loans (see e.g. Williams v Geithner, supra; Escobedo v Countrywide Home Loans, Inc., supra). Since there is no duty on the part of the HAMP servicers to modify mortgages (see Nelson v Bank of Am., N.A., supra; Lucia v Wells Fargo Bank, N.A., supra; Hart v Countrywide Home Loans, Inc., supra), neither the engagement in the processing of *374 loan modification applications nor the issuance of a TPP gives rise to a right on the part of borrowers to permanent loan modifications if they successfully complete the trial plan payments (see Steffens v American Home Mtge. Sevicing, Inc., supra; Ramos v Wells Fargo Home Mtge., supra; Keosseian v Bank of Am., supra; Bourdelais v J.P. Morgan Chase, supra; Senter v JPMorgan Chase Bank, N.A., supra; Grill v BAC Home Loans Servicing LP, supra; Zoher v Chase Home Fin., supra; Robinson v Wells Fargo Bank, N.A., supra; Escobedo v Countywide Home Loans, Inc., supra).
Nor did the llardos establish an entitlement to summary judgment on their counterclaims for a judicially imposed permanent modification of their mortgage loan and the eradication of accrued interest and loan deficiencies under state law theories. Under New York law, the elements of a cause of action to recover damages for breach of contract are: the existence of a contract, the claimant’s performance under the contract, the defendant’s breach of that contract, and resulting damages (see Palmetto Partners, L.P. v AJW Qualified Partners, LLC, 83 AD3d 804 [2d Dept 2011]; JP Morgan Chase v J.H. Elec, of N.Y., Inc., 69 AD3d 802, 803 [2d Dept 2010]). A contract should be read as a whole and interpreted as to give effect to its general purpose (see Beal Sav. Bank v Sommer, 8 NY3d 318, 324-325 [2007]).
The llardos’ claims that the TPP was a binding contract and the plaintiff breached it by failing to offer a permanent modification after the llardos successfully performed are rejected as unmeritorious. Assuming, without so finding, that súch claims are sufficiently distinct from claims that the plaintiff breached HAMP directives or guidelines, there has been no offer of proof that the plaintiff breached any binding obligation imposed upon it under the terms of the TPf) as the issuance of permanent modification was conditioned upon a number of events. The TPP between the parties here contains terms identical to those in the Costigan case, with respect to which the Costigan court stated as follows:
“Although the TPP states that Citi ‘will provide [the borrower] with a Home Affordable Modification Agreement’ [(TPP Preamble)] if the borrower is in compliance with the TPI) it also unequivocally states that the TPP does not constitute a permanent modification of the original loan; by signing the TPfi Costigan attested that he
“ ‘understand^] that this Plan is not a modification *375 of the Loan Documents and that the Loan Documents will not be modified unless and until (i) [he] meets all of the conditions required for modification, (ii) [he] receive [s] a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.’ [(Id. § 2.G.)]
“The TPP ponders that ‘[i]f prior to the Modification Effective Date . . . the Lender does not provide [the borrower] with a fully executed copy of. . . the Modification Agreement . . . the Loan documents will not be modified . . . .’ [(Id. § 2.E)] By signing the TPI] Costigan ‘agree[d] that [Citi] will not be obligated or bound to make any modification of the Loan Documents if [Citi] determines that [Costigan does] not qualify.’ [(Id.)] The Complaint fails to plead that Costigan met ‘all of the conditions required for modification’ and Citi clearly never received a ‘fully executed copy of the Modification Agreement’ ” (2011 WL 3370397 at *6, 2011 US Dist LEXIS 84860 at *21-22).
This court finds this reasoning persuasive and thus finds that the llardos’ breach of the TPP claim “is contradicted by the express terms of the TPP agreement, which states that any permanent modification is subject to the subsequent approval of Chase, and the receipt of a signed modification agreement” (Costigan v CitiMortgage, Inc., 2011 WL 3370397 at *6, 2011 US Dist LEXIS 84860 at *20-21, quoting Thomas v JPMorgan Chase & Co., 811 F Supp 2d 781, 796 [2011]). Here, it is not disputed that the llardos’ NPV result was properly calculated as “negative” at 26% well below the 31% threshold imposed upon qualification. Since the llardos make no claim that the plaintiff breached an enforceable obligation imposed by any unconditional term of the TPI] such as the suspension of a scheduled foreclosure sale, their breach of contract claims, to the extent premised upon the terms of the TPP, are without merit (see Thomas v JPMorgan Chase & Co., supra; Stolba v Wells Fargo & Co., supra; Keosseian v Bank of Am., supra). Moreover, since there is no federal entitlement to a permanent loan modification, the plaintiff did not breach the TPP by failing to offer a permanent modification of the loan, even though the llardos fulfilled their installment payment obligations thereunder. As indicated above, performance on the part of the claimant is but one element of a breach of contract claim. The court thus finds that the llardos are not entitled to the affirmative relief demanded under the common law of contracts.
*376 Also without merit are the llardos’ claims of waiver. Under principles of New York jurisprudence, a waiver is a voluntary-relinquishment of a known right that should not be lightly presumed (see Gilbert Frank Corp. v Federal Ins. Co., 70 NY2d 966 [1988]; Fish King Enters, v Countrywide Ins. Co., 88 AD3d 639 [2d Dept 2011]). In the TPB the plaintiff expressly reserved its right to all remedies afforded under original loan documents, including its right to foreclose in the event of a default. The record here is devoid of any evidence of a waiver of any right to foreclose on the part of the plaintiff (see Federal Home Loan Mtge. Corp. v Drofan Realty Corp., 1996 WL 15680, 1996 US Dist LEXIS 345 [SD NY 1996]; Federal Home Loan Mtge. Corp. v 141st St. & Broadway Realty Co., 1994 WL 9686, 1994 US Dist LEXIS 103 [SD NY 1994]).
Equally lacking in merit are the defendants’ claims for relief under principles of promissory estoppel. “The elements of a cause of action based upon promissory estoppel are a clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained in reliance on that promise” (Agress v Clarkstown Cent. School Dist., 69 AD3d 769, 771 [2d Dept 2010]). The requirement that there be a clear and unambiguous promise is not met by references to a course of conduct between the parties (see Southern Fed. Sav. & Loan Assn, of Georgia v 21-26 E. 105th St. Assoc., 145 BR 375, 383 [SD NY1991], affd 978 F2d 706 [2d Cir 1992]). In addition, the conduct relied upon to establish estoppel must not be otherwise compatible with the agreement between the parties as written (see Rose v Spa Realty Assoc., 42 NY2d 338 [1977]; Southern Fed. Sav. & Loan Assn, of Georgia v 21-26 E. 105th St. Assoc., supra). Because the TPP agreement unequivocally states that it does not constitute a permanent modification of the llardos’ loan, the other portions wherein it states that if the borrowers returned executed TPP agreements with supporting documentation and made their TPP payments, they would receive a permanent HAMP modification are insufficient to establish a claim of promissory estoppel (see Costigan v CitiMortgage, Inc., supra; Thomas v JPMorgan Chase & Co., supra; cf. Picini v Chase Home Fin. LLC, supra).
Likewise unavailing are the asserted claims of equitable estoppel. Although a mortgage lender may be estopped from asserting rights under a mortgage to prevent a fraud or injustice upon the person against whom enforcement is sought, the reli *377 anee upon the lender’s words or promises must be justifiable and such words must mislead the borrower to a detriment (see Red Tulip, LLC v Neiva, 44 AD3d 204 [1st Dept 2007]; Carver Fed. Sav. & Loan Assn. of N.Y. v Glanzer, 186 AD2d 706 [2d Dept 1992]). Here, no justifiable reliance on the terms of the TPP has been shown to exist (see Costigan v CitiMortgage, Inc., supra; Thomas v JPMorgan Chase & Co., supra; cf. Picini v Chase Home Fin. LLC, supra). To the extent that the llardos’ unsubstantiated and nonspecific allegations of misleading and unconscionable conduct and bad faith over the course of the unsuccessful modification may be construed as sounding in tort, they are legally insufficient (see Baer v Complete Off. Supply Warehouse Corp., 89 AD3d 877 [2d Dept 2011]; Ford v Waxman, 50 AD2d 585 [2d Dept 1975]; see also Federal Home Loan Mtge. Corp. v Drofan Realty Corp., supra; Federal Home Loan Mtge. Corp. v 141st St. & Broadway Realty Co., supra; see also Thomas v JPMorgan Chase & Co., supra; Hemmenway v Wells Fargo, N.A., supra).
The court rejects the defendants’ claim that their motion should be granted in light of the failure of the plaintiff to file a request for judicial intervention (RJI) upon the filing of the proofs of service as required by Uniform Rules for Trial Courts (22 NYCRR) § 202.12-a (b). The rule does not require that the plaintiff file the RJI upon the filing of proof of service upon the borrower, who is likely one of several proper party defendants to be joined in the action. Additionally, there is no time requirement imposed upon the filing of proof of service effected by personal delivery (see CPLR 308 [1]). Since a plaintiff has as long as 120 days to effect service, and even longer if it be extended by the court, the rule does not mandate the immediate filing of the RJI. In any event, dismissal of any claim due to a default in the observance of procedural statutes is considered a drastic remedy available only upon a clear showing of wilful and contumacious conduct (see CPLR 3126; Orgel v Stewart Tit. Ins. Co., 91 AD3d 922 [2d Dept 2012]; see also CPLR 3216; Atterberry v Serlin & Serlin, 85 AD3d 949, 949 [2d Dept 2011] [CPLR 3216 is an “extremely forgiving” statute which “never requires, but merely authorizes, the Supreme Court to dismiss a plaintiff’s action based on the plaintiffs unreasonable neglect to proceed”]). Here, the llardos failed to demonstrate a violation of 22 NYCRR 212-a (b) or that any such violation warrants the dismissal of this action and/or the granting of the other relief demanded.
*378 Finally, the court declines the llardos’ invitation to adopt the reasoning of the court in Wells Fargo Bank, N.A. v Meyers (30 Misc 3d 697 [2010], supra). While the court appreciates Acting Justice Sweeney’s apparent frustration with the plaintiff’s steadfast unwillingness to issue a permanent modification, a judicially imposed directive compelling the plaintiff to specifically perform a modification agreement, to which it had not assented and was not required to so assent by law, constitutes an unreasonable resort to equitable principles to override longstanding principles of contract law. Although many courts have found instances of bad faith negotiations on the part of banks in this recent flood of mortgage foreclosure actions, a resort to the court’s equity powers in an effort to bring about a judicially desired result has had harsh results, including the cancellation of mortgages, the dismissal of various foreclosure actions with prejudice, the imposition of monetary sanctions well beyond the limits prescribed for frivolous conduct under 22 NYCRR part 130 and a judicially compelled loan modification. While appellate courts sort out the appropriateness of such action, this court remains guided by a more tempered approach reflective of fundamental pronouncements of law and equity issued by our Court of Appeals such as those set forth in Jo Ann Homes at Bellmore v Dworetz (25 NY2d 112 [1969]). Writing for a unanimous panel, Judge Burke wrote:
“Concededly, a foreclosure action is a ‘proceeding in a court of equity which is regulated by statute.’ (Dudley v. Congregation of St. Francis, 138 N. Y. 451, 457; see, also, Amherst Factors v. Kochenburger, 4 NY2d 203) Nevertheless, it is well settled that such a proceeding is unlike other equity actions in several ways. Thus, while equity acts only in personam, an action for foreclosure ‘is in the nature of a proceeding in rem to appropriate the land”. (Reichert v. Stilwell, 172 N. Y. 83, 89.) Just as this court sustained the legality of a mortgage where the note was illegal (Amherst Factors v. Kochenburger, supra.;), we now conclude that a mortgage may not be set aside solely because the underlying transaction was tainted by a fraudulent representation. The trial court, which was the court of equitable jurisdiction in this instance, chose not to sustain the defense of fraud in the foreclosure proceeding and neither common sense nor precedent warrants a contrary determination” (id. at 122 [emphasis added]).
*379 More recently, the Second Department reminded us that the “ ‘stability of contract obligations must not be undermined by judicial sympathy’ ” (Emigrant Mtge. Co., Inc. v Fisher, 90 AD3d 823, 824 [2011], quoting First Natl. Stores v Yellowstone Shopping Ctr., 21 NY2d 630, 638 [1968], quoting Graf v Hope Bldg. Corp., 254 NY 1, 4-5 [1930]).[1] In Graf, Judge O’Brien found as follows:
“Plaintiffs may be ungenerous, but generosity is a voluntary attribute and cannot be enforced even by a chancellor. Forbearance is a quality which under the circumstances of this case is likewise free from coercion. Here there is no penalty, no forfeiture (Ferris v. Ferris, 28 Barb. 29; Noyes v. Anderson, 124 N. Y. 175, 180), nothing except a covenant fair on its face to which both parties willingly consented. It is neither oppressive nor unconscionable. (Valentine v. Van Wagner, 37 Barb. 60.) In the absence of some act by the mortgagee which a court of equity would be justified in considering unconscionable, he is entitled to the benefit of the covenant. The contract is definite and no reason appears for its reformation by the courts. (Abrams v. Thompson, 251 N. Y. 79, 86.) We are not at liberty to revise while professing to construe. (Sun P. & P. Assn. v. Remington P. & P. Co., 235 N. Y. 338, 346.) Defendant’s mishap, caused by a succession of its errors and negligent omissions, is not of the nature requiring relief from its default. Rejection of plaintiffs’ legal right could rest only on compassion for defendant’s negligence. Such a tender emotion must be exerted, if at all, by the parties rather than by the court. Our guide must be the precedents prevailing since courts of equity were established in this State. Stability of contract obligations must not be undermined by judicial sympathy. To allow this judgment to stand would constitute an interference by this court between parties whose contract is clear” (Graf, 254 NY at 4-5).[2]
Guided as it is by the foregoing precedents, this court finds that a determination not to modify a mortgage loan by a *380 foreclosing bank that is under no legal obligation to modify such a loan is not unconscionable conduct and does not constitute bad faith. Even if it did, resort to the equitable powers of this court as a means to judicially impose a loan modification would, in the opinion of this court, be inappropriate. The court thus declines to invoke its equity powers in aid of the granting of the defendants’ demands for a judicially imposed permanent loan modification and the other relief demanded by them.
In view of the foregoing, the defendants’ motion for summary judgment on their counterclaims is denied and reverse summary judgment dismissing the defendants’ counterclaims, pursuant to CPLR 3212 (b), is awarded to the plaintiff.

. The Second Department in Fisher reversed the order of the trial court which reduced the mortgagors’ monthly payments due, among other things, to the trial court’s apparent sympathy for the distressed financial circumstances of the borrowers who were suffering from one or more medical conditions.

. Because the result in Graf is predicated upon a rejection of a resort to equity in aid of a borrower, it has its detractors (see Di Matteo v North Tonawanda Auto Wash, 101 AD2d 692 [4th Dept 1984]). It is nevertheless ap *380 plied regularly in cases wherein there has been a default in the payment of principal and interest (see Red Tulip, LLC v Neiva, 44 AD3d 204 [2007]; Hudson City Sav. Inst, v Burton, 88 AD2d 728 [3d Dept 1982]; Federal Home Loan Mtge. Corp. v Drofan Realty Corp., supra; Federal Home Loan Mtge. Corp. v 141st St. & Broadway Realty Co., supra; see also 1 Mortgages and Mortgage Foreclosure in New York § 28:17).